FILED by RB   D.C.

ELECTRONIC

**Oct. 12, 2007**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 07-80948-Civ-DIMITROULEAS/ROSENBAUM

| | |
|---|---|
| MICHAEL MILLER, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| DYADIC INTERNATIONAL, INC., MARK A. EMALFARB, STEPHEN J. WARNER, HARRY Z. ROSENGART, RICHARD J. BERMAN, ROBERT B. SHAPIRO and GLENN E. NEDWIN, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff alleges the following based upon the investigation of his counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Dyadic International, Inc. ("Dyadic" or the "Company"), as well as regulatory filings and reports, securities analysts reports, advisories about the Company, press releases and other public statements issued by the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of purchasers of the securities of Dyadic between November 10, 2006 and April 23, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     The allegations herein stem from operational and financial improprieties perpetrated by the Company and its Asian subsidiaries, and knowingly and/or recklessly approved by the defendants, which culminated in an internal investigation and subsequent firing of the Company's Chairman and Chief Executive Officer Mark A. Emalfarb.  Specifically, the Company's internal investigation revealed that the Company's Asian subsidiaries' largest customer ("Largest Customer"), which represented approximately 25% of the Asian subsidiaries' reported net sales for 2006 and approximately 33% of their net accounts receivable as of December 31, 2006, was secretly controlled by the Asian subsidiaries' management.  The Largest Customer purchased products from the Asian subsidiaries and subsequently resold the same products on a cash basis to businesses in mainland China in order to avoid the Chinese reporting and sales tax requirements.  Defendant Mark A. Emalfarb knew and willfully participated in the scheme and all of the defendants approved Dyadic's publicly filed financial statements containing material misstatements and omissions stemming from the illegal conduct alleged herein.

3.     As a result of the improprieties in the Company's Asian subsidiaries and the subsequent internal investigation, the Company has abandoned its Asian operations and the Company's stock, which was artificially inflated as a result of the material omissions and misstatements contained within the Company's publicly filed financial statements and reports, is no longer publicly traded and is at risk of being delisted, resulting in total loss of equity for owners of Dyadic's securities.   Furthermore, the Company's internal investigation has prompted the termination of defendant Mark A. Emalfarb, has already resulted in liquidated damages, and will

2

likely result in additional damages stemming from potential inquiries and/or prosecutions from regulators and the looming delisting.

## JURISDICTION AND VENUE

4.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Additionally, defendants maintain their chief executive offices and principal place of business within this District.

7.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

8.      Plaintiff Michael Miller, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Dyadic at an artificially inflated price during the Class Period and has been damaged thereby.

3

9.      Defendant Dyadic is a Delaware corporation with its principal executive offices located at 140 Intracoastal Pointe Drive, Suite 404, Jupiter, Florida 33477. According to the Company's public filings, Dyadic is a global biotechnology company with operations in the United States, Hong Kong and mainland China, Poland and The Netherlands. The Company is engaged in research and development, the collaborative licensing of its patented and other proprietary technologies to develop and manufacture biological products and the manufacture and sale of industrial enzymes and other proteins for the industrial, biorefinery and pharmaceutical industries. The Company's stock is listed, with trading restrictions, on the American Stock Exchange ("AMEX") under the symbol "DIL."

10.      Defendant Mark A. Emalfarb ("Emalfarb") is the Company's founder and has served as its Chief Executive Officer and President until his termination – stemming from the illegal conduct alleged herein – effective September 24, 2007. Emalfarb was also Chairman of the Board of the Company until September 7, 2007. Emalfarb is the Company's largest shareholder of the Company, with over 49% of the stock listed either in his name or that of a family trust. Despite his termination from the management positions, Emalfarb remains a director of the Company.

11.      Defendant Stephen J. Warner ("Warner") has been a director of the Company since August 2004. He is a member of the Audit, Compensation, Nominating and Executive committees of the Company's Board. Warner also serves as the managing member of Bioform LLC.

12.      Defendant Harry Z. Rosengart ("Rosengart") has been a director of the Company since April 2005. He was elected as Chairman of the Board on September 7, 2007, replacing

4

defendant Emalfarb, and is a member of the Audit, Compensation and Executive committees of the Company's Board. Rosengart is also the President and CEO of HK & Associates.

13.     Defendant Richard J. Berman ("Berman") has been a director of the Company since January 2005 and is its Lead Director. He is the Chairman of the Audit, Compensation, Nominating and Executive committees of the Board. Berman is also a director of International Microcomputer Software, Inc., Internet Commerce Corporation, MediaBay, Inc., NexMed, Inc. and GVI Security Solutions, Inc.

14.     Defendant Robert B. Shapiro ("Shapiro") has been a director of the Company since March 2005 until his resignation effective July 7, 2007. He was a member of the Nominating and Executive committees of the Board.

15.     Defendant Glenn E. Nedwin ("Nedwin") has been a director and Chief Scientific Officer Vice President and President of the Biosciences Business of the Company since March 2006, until his resignation on September 27, 2007. Nedwin was member of the Executive Committee of the Board.

16.     Defendants Emalfarb, Warner, Rosengart, Berman, Shapiro and Nedwin are collectively referred to as the "Individual Defendants."

17.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, financial condition and markets via access to internal corporate documents (including the Company's results of actual operations from its Asian subsidiaries), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings

5

and committees thereof and via reports and other information provided to them in connection therewith.

18.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, as alleged herein, are the collective actions of the narrowly defined group of defendants identified above. Each of the above directors or officers of Dyadic, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations. products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware or recklessly disregarded that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements in violation of the federal securities laws.

19.     As directors and/or officers, and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on AMEX, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and business prospects, and to correct or update any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon

6

truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

20. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board memberships and/or executive and managerial positions with Dyadic, each of the Individual Defendants had access to the adverse undisclosed information about Dyadic's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Dyadic and its business issued or adopted by the Company materially false and misleading.

21. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

22. Each of the defendants is liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Dyadic securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The

7

scheme: (i) deceived the investing public regarding Dyadic's business, finances, financial condition and the intrinsic value of Dyadic securities; and (ii) caused plaintiff and other members of the Class to purchase Dyadic securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired the securities of Dyadic during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Dyadic common shares were actively traded on AMEX. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Dyadic or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

8

26.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by defendants' acts as

alleged herein;

b.      whether statements made by defendants to the investing public during the

Class Period misrepresented material facts about the business, operations, prospects and financial

statements of Dyadic; and

c.      to what extent the members of the Class have sustained damages and the

proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as

a class action.

## SUBSTANTIVE ALLEGATIONS

9

## Materially False And Misleading
## Statements Made During The Class Period

29.     On November 10, 2006, the beginning of the Class Period, Dyadic announced

financial results for the quarter ended September 30, 2006 in its Form 10-QSB ("Form 10-

QSB"), filed with the SEC.  According to defendants:

> For the nine-months ended September 30, 2006, we generated
> net sales of approximately $12,000,000, compared to net sales
> of approximately $11,863,000 for the nine-months ended
> September 30, 2005, an increase of approximately $137,000.
> This increase in net sales reflects the Company's efforts to
> transition its revenue base from the lower margin textile
> enzymes to higher margin areas such as enzymes for the pulp
> & paper (a 63% increase over the 2005 comparable period),
> animal feed and other industries, which in the aggregate,
> represents an increase in net sales in theses industries of 32%
> over sales for the nine-months ended September 30, 2005 (or
> 35% of net sales versus 27%).

30.     In Form 10-QSB, the Company reported segment information on three of its

reportable segments: U.S. Operations, Asian operations and Netherlands operations.  For the nine

months ended September 30, 2006, the Asian operating segment was the only segment with

positive net income from operations.  The Company also reported that it "has historically funded

losses from operations with proceeds from external borrowings, borrowings from its

stockholders, and sales of preferred and common equity securities."  Form 10-QSB was signed,

among others, by defendant Emalfarb.

31.     In Exhibit 32.1 to the Form 10-QSB, Certification of Chief Executive Officer,

defendant Emalfarb certified that "The information contained in the Report fairly presents, in all

material respects, the financial condition and results of operation of the Company."

10

32.     In Exhibit 31.1 to the Form 10-QSB, Certification Pursuant to Section 302 of the

Sarbanes-Oxley Act of 2002, defendant Emalfarb certified that:

> 2.     Based on my knowledge, this Quarterly Report
> does not contain any untrue statement of a material
> fact or omit to state a material fact necessary to make
> the statements made, in light of the circumstances
> under which such statements were made, not
> misleading with respect to the period covered by this
> Quarterly Report;
>
> 3.     Based on my knowledge, the financial
> statements, and other financial information included
> in this Quarterly Report, fairly present in all material
> respects the financial condition, results of operations
> and cash flows of the Company as of, and for, the
> periods presented in this Quarterly Report.

33.     On December 21, 2006, Dyadic filed with the SEC a Form S-3 Registration

Statement (the "Registration Statement") for 5,581,484 shares of its common stock comprised of:

(a) 2,136,752 shares of common stock issued to an investor in a private placement completed on

November 8, 2006; (b) 2,787,000 shares of common stock issued to investors in a private

placement completed on December 1, 2006; and (c) 657,732 shares of common stock issuable

upon exercise of warrants issued to the investors and the placement agent in the private

placement completed on December 1, 2006. The Registration Statement incorporated by

reference the Form 10-QSB and was signed by each Individual Defendant.

34.     The Company announced financial results for the year ended December 31, 2006

in its Form 10-KSB ("Form 10-KSB") filed with the SEC on April 2, 2007 and signed by each of

the Individual Defendants. The press release accompanying Form 10-KSB stated:

11

Total net sales for the year ended December 31, 2006, were approximately $15.4 million as compared to approximately $15.9 million for 2005. The decline in sales primarily reflected lower prices in the textile industry, which represented 65% of total sales for 2006 as compared to 72% of total sales for 2005. This decline was partially offset by an increase in higher-margin sales to customers in the pulp & paper, animal feed and other industries, which represented 35% of total sales for 2006 as compared to 28% of total sales for 2005.

2006 net sales to the pulp & paper industry increased by 41% versus prior year to approximately $2.6 million from approximately $1.9 million, which represented 17% of net sales as compared to 12% of net sales for 2005. Net sales to the animal feed industry increased by 31% to approximately $1.4 million for 2006 from approximately $1 million for 2005, which represented 9% of net sales versus 7% for the prior year.

...Dyadic reported working capital of approximately $36.7 million, including cash and cash equivalents of $31.1 million. This compares to working capital at December 31, 2005, of $16.6 million, including cash and cash equivalents of $12.1 million.

In a press release on the 2006 year end report, defendant Emalfarb commented:

We made substantial and important progress on all fronts during 2006:

We strengthened our balance sheet with the net proceeds received from the closing of a $13 million private placement with several institutional investors. Together with the proceeds from the purchase of our common stock by Abengoa Bioenergy, this increased Dyadic's cash position to more than $31 million at December 31, 2006.

12

> Building on these accomplishments, we believe that we
> have positioned Dyadic to accelerate our efforts on all
> fronts in 2007 and beyond.

35.     On April 6, 2007, *CashFLowNews.com* reported that free cash flow for Dyadic for its twelve months ended December 31, 2006 was $271,038, compared with negative $8,228,380 for the twelve months ended December 31, 2005.  Prior to the last quarter of 2006, the Company had generated nine consecutive quarters of negative free cash flow.  Free cash flow for that quarter also reached a two year high.

36.     Also on April 6, 2007, *StockDiagnostics.com* upgraded its OPS Ranking of Dyadic's stock to "4" from its previous ranking of "8."  This ranking was the highest for Dyadic over the previous year.  The ranking upgrade was based on Dyadic's recently filed Cash Flow statements for its quarter ended December 31, 2006.

### The Truth Begins To Emerge

37.     On April 24, 2007, shareholders were shocked to learn that Dyadic had "discovered potential material operational and financial improprieties at its Hong Kong and mainland China operations following the recent death of the managing director of its Hong Kong operations."  The Company further reported that its Audit committee initiated an investigation of the facts surrounding these improprieties while placing defendant Emalfarb on a leave of absence from all of his positions and offices with the Company pending the outcome of the investigation. Defendant Emalfarb has also taken a leave of absence from his directorial position as Chairman of the Board.  The Company further announced that:

> As a result of these improprieties, the Company will not be in
> a position to make a timely filing with the Securities and

13

Exchange commission of its Quarterly Report on Form 10-QSB for the quarter ended March 31, 2007, nor will it be in a position to announce its operational and financial results for the quarter. The Company expects to file the Quarterly Report as soon as practicable.

On April 23, 2007, the Company's board of directors, upon the recommendation of the audit committee, determined that the Company's previously filed financial statements, including those contained in its Annual Reports on Form 10-KSB and Quarterly Reports on Form 10-QSB, as filed with the SEC, should no longer be relied upon.

The Company has notified and is working with Ernst & Young LLP, its independent registered public accounting firm, to address these matters.

The Company is in discussions with the American Stock Exchange regarding the continued listing of its shares; however, it anticipates that the Exchange may, in accordance with its rules, initiate delisting proceedings against the Company. Furthermore, the Company has been notified by the Exchange that the trading in its shares will continue to be halted until such time as additional information regarding these matters is publicly available.

38.     The Market reaction to the news was negative. Dyadic's stock was downgraded by several analysts, including from "buy" to "hold" by Cantor Fitzgerald, on April 25, 2007, and from "buy" to "neutral" by SMH Capital, on May 1, 2007.

39.     On May 21, 2007, Dyadic provided an update on the progress of its internal investigation. The Company revealed that:

Following the recent death of the managing director of the Company's Asian subsidiaries, the Company received anonymous "whistleblower" communications alleging a number of improprieties perpetrated against the subsidiaries by the subsidiaries' management. The Company's investigation . . . thus far has revealed that the Asian

14

subsidiaries' largest customer was secretly controlled by the Asian subsidiaries' management, including the deceased managing director.   This customer, which represented approximately 28% of the Asian subsidiaries' reported net sales for 2006 of approximately $6.1 million and approximately 33% of their net accounts receivable of approximately $1.7 million as of December 31, 2006, purchased products from the Asian subsidiaries which it subsequently re-sold on a cash basis to businesses in mainland China, apparently allowing these businesses to avoid Chinese reporting and sales tax requirements.

* * *

Mark A. Emalfarb, the Company's Chief Executive Officer and Chairman of its Board of Directors, remains on a leave of absence from all of his positions and offices with the Company pending completion of the independent investigation.

As previously announced, the Company's financial statements, including those contained in its Annual Reports on Form 10-KSB and Quarterly Reports on Form 10-QSB, as previously filed with the SEC, should no longer be relied upon. The Company has suspended indefinitely the use of its previously filed registration statement on Form S-3 covering the resale of shares of its common stock by investors who participated in the Company's private placement completed on December 1, 2006.  During this suspension period, the Company is obligated to pay liquidated damages of approximately $130,000 per month beginning on May 23, 2007, up to a maximum of $1.3 million.

On May 17, 2007, the Company received notice from the American Stock Exchange that the Company is currently in violation of the Exchange's continuing listing standards specified in Sections 134 and 1101 of the Exchange's Company Guide because the Company has yet to file with the SEC its quarterly report on Form 10-QSB for the quarter ended March 31, 2007. The notice further indicates that the Company must submit a plan to the Exchange by June 18, 2007, advising the Exchange of action it has taken, or will take, that will enable the Company to regain compliance with

15

> theses continued listing standards by no later than November 16, 2007.
>
> * * *
>
> The halt on trading in the Company's shares that went into effect, at the request of the Registrant, on April 23, 2007, has been and, at the direction of the Exchange, will continue to be in effect until such time as the Company has filed with the SEC its quarterly report on Form 10-QSB for the quarter ended March 31, 2007.

40.     On July 9, 2007, the Company announced that it has received notice from AMEX

that its AMEX listing is being continued pursuant to an extension.  Pursuant to the notice,

AMEX had accepted the Company's June 18, 2007 plan of compliance, pursuant to which the

Company had until November 16, 2007 to regain compliance with AMEX's continued listing

standards.  The notice further stated that:

> The Company will not be deemed to have regained compliance with the AMEX continued listing standards, and trading in the Company's stock will not resume on the Amex, until the Company is current with the filing of its SEC quarterly reports and other SEC periodic reports.
> At the end of the plan period, November 16, 2007, the Company must be in compliance with all of the Amex continued listing standards, including being current with the above SEC filings.   Failure to regain compliance by November 16, 2007, will likely result in the Amex initiating delisting proceedings against the Company pursuant to Section 1009 of the Company Guide.

41.     On August 23, 2007, Dyadic announced that it had received a second notice from

AMEX indicating that the Company continued to be in violation of AMEX's continued listing

standards because it failed to file with the SEC its Form 10-QSB for the quarters ended March

31, 2007 and June 30, 2007.

16

42.     On September 24, 2007, the Company announced that on September 20, 2007, a special committee of its board of directors authorized the termination for cause by the Company of defendant Emalfarb as the Company's Chief Executive Officer and President. The Company's action was based upon its earlier investigation, which revealed that Emalfarb *willfully* concealed facts relating to material operational and financial improprieties at the Company's Asian subsidiaries. The Investigation further revealed that "former management of the Company and the management of the Asian subsidiaries had willfully concealed facts relating to these material operational and financial improprieties by the Company's Asian subsidiaries. The Company has abandoned its Asian operations because of its concerns over these material operational and financial improprieties." The Company further reported that:

> As previously reported, the Company's financial statements, including those contained in its Annual Report on Form 10-KSB, as previously filed with the Securities and Exchange Commission (the "SEC"), should not be relied upon. The Company is currently in the process of determining the proper accounting treatment to record the effect of abandoning the Asian operations and to be able to issue its Quarterly Reports on Form 10-QSB for the quarters ended March 31, June 30 and September 30, 2007, although there can be no assurances in this regard as to the timing of or the Company's ability to achieve same.

43.     On September 25, 2007, in an article titled "Dyadic Fires Firm's Founder," the *Palm Beach Post* reported that Dyadic fired its Chairman and CEO Mark Emalfarb because "he hid information about a tax-evasion scheme perpetrated by the management of its Asian units."

## Undisclosed Adverse Information

44.     The market for Dyadic's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to

17

disclose the illegal conduct, Dyadic's common stock traded at artificially inflated prices during the Class Period.  The artificial inflation continued until the time Dyadic acknowledged that, contrary to its representations during the Class Period, it had been aware of material operational and financial improprieties; this admission was communicated to the securities markets and resulted in the present illiquidity of Dyadic's securities.  Plaintiff and other members of the Class purchased or otherwise acquired Dyadic securities relying upon the integrity of the market price of Dyadic's securities and market information relating to Dyadic, and have sustained damages as a result of the internal investigation and the halt in public trading of Daydic's securities, and stand to suffer more damages should Dyadic fail to fulfill AMEX's continued listing requirements by the November 16, 2007 deadline.

45.     During the Class Period, defendants materially misled the investing public and violated the Sarbanes-Oxley Act of 2002,  through its SEC filings and certain press releases, thereby inflating the price of Dyadic's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

a.      that the Company's Asian subsidiaries had engaged in a tax-evasion scheme whereby the Asian subsidiaries' Largest Customer, secretly controlled by Asian subsidiaries' management, purchased products from the Asian subsidiaries and subsequently re-sold products on a cash basis to businesses in China in order to avoid Chinese reporting and income tax requirements.

18

b.      that defendant Emalfarb willfully participated in, and Dyadic and the Individual Defendants were or should have been aware of the Asian subsidiaries' and Emalfarb's illegal conduct and intentionally concealed such conduct from Dyadic's public shareholders in order to inflate the price of Dyadic's shares; and

c.      that a substantial portion of the Company's revenues for the 2006 fiscal period were fabricated in that hundreds of thousands of dollars of reported income were improperly recognized.

46.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages already sustained or to be sustained by plaintiff and other members of the Class. As a result of the conduct alleged herein, Dyadic has already paid $650,000 in liquidated damages to a private party for having suspended its previously filed Registration Statement and the Company's securities' owners are damaged by a lack of liquidity in their Dyadic securities which may result in a 100% loss of all of their Dyadic equity should Dyadic continue to fail to comply with AMEX's continued listing requirements.

**SCIENTER ALLEGATIONS**

47.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their

19

receipt of information reflecting the true facts regarding Dyadic, their control over, and/or receipt

and/or modification of Dyadic's materially misleading misstatements and/or their associations

with the Company which made them privy to confidential proprietary information concerning

Dyadic, participated in or enabled the fraudulent scheme alleged herein.

48.    Additionally, defendants were financially motivated to commit the fraudulent

conduct alleged herein.  Each of the Individual Defendants owned a substantial number of

Dyadic's securities during the Class Period, including defendant Emalfarb, who owned more than

49% of shares of Dyadic in his name or that of a family trust.  Further, defendants were motived

to keep the price of Dyadic's stock high in order to use the Company's securities to generate

financing of its research and development projects, as is demonstrated by the private placement

dated November 8, 2006, whereby Abengoa Bioenergy R&D, Inc. invested $10 million in

Dyadic, for which Dyadic issued 2,136,752 shares of Dyadic common stock.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

49.    At all relevant times, the market for Dyadic's securities was an efficient market

for the following reasons, among others:

a.    Dyadic's stock met the requirements for listing, and was listed and actively

traded on the AMEX, a highly efficient and automated market;

b.    As a regulated issuer, Dyadic filed periodic public reports with the SEC

and AMEX;

c.    Dyadic regularly communicated with public investors via established

market communication mechanisms, including through regular disseminations of press releases

20

on the national circuits of major newswire services and through other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services;

and

    d.  Dyadic was followed by securities analysts employed by major brokerage

firms who wrote reports which were distributed to the sales force and certain customers of their

respective brokerage firms. Each of these reports was publicly available and entered the public

marketplace.

   50.  As a result of the foregoing, the market for Dyadic's securities promptly digested

current information regarding Dyadic from all publicly available sources and reflected such

information in Dyadic's stock price. Under these circumstances, all purchasers of Dyadic's

securities during the Class Period suffered similar injury through their purchase of Dyadic's

securities at artificially inflated prices and a presumption of reliance applies.

**FIRST CLAIM**

**Violation Of Section 10(b) Of**
**The Exchange Act Against And Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

   51.  Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

   52.  During the Class Period, Dyadic and the Individual Defendants, and each of them,

carried out a plan, scheme and course of conduct which was intended to and, throughout the

Class Period, did: (i) deceive the investing public, including plaintiff and other Class members,

as alleged herein; (ii) artificially inflate and maintain the market price of Dyadic's securities; and

(iii) cause plaintiff and other members of the Class to purchase Dyadic's securities at artificially

21

inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Dyadic's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.    In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the Sarbanes-Oxley Act of 2002, the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 et seq.) and Regulation S-K (17 C.F.R. Sections 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

55.    Dyadic and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and prospects of Dyadic as specified herein.

56.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Dyadic's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Dyadic and its business operations and prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Dyadic's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors of the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or a director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Dyadic's operating condition and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Dyadic's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Dyadic's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Dyadic securities during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

24

other members of the Class and the marketplace known of the fraud perpetrated at Dyadic, which

was not disclosed by defendants, plaintiff and other members of the Class would not have pur-

chased or otherwise acquired their Dyadic securities, or, if they had acquired such securities

during the Class Period, they would not have done so at the artificially inflated prices which they

paid.

      61.    By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

      62.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individuals Defendants

      63.    Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

      64.    The Individual Defendants acted as controlling persons of Dyadic within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions, and their substantial share ownership and contractual rights, participation in and/or

awareness of the Company's operations and/or intimate knowledge of the false financial

statements filed by the Company with the SEC and disseminated to the investing public, the

Individual Defendants had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements which plaintiff contends are false and misleading. The

Individual Defendants were provided with or had unlimited access to copies of the Company's

25

reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, Dyadic and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 12, 2007

          **VIANALE & VIANALE LLP**

          By: _____
              Kenneth J. Vianale
              Fla. Bar No. 0169668
              Julie Prag Vianale
              Fla. Bar No. 0184977
          2499 Glades Road
          Suite 112
          Boca Raton, Florida  33431
          Tel:    (561) 392-4750
          Fax:    (561) 392-4775

          **WEISS & LURIE**
          Joseph H. Weiss
          Ilya Nuzov
          551 Fifth Avenue
          New York, New York 10176
          Tel:    (212) 682-3025

          **Attorneys for Plaintiff**

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MICHAEL MILLER ("Plaintiff"), hereby certifies as follows:

1.      I have reviewed the complaint being filed on my behalf and on behalf of all others similarly situated and authorized its filing.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      To the best of my current knowledge, I purchased the following shares of Dyadic International, Inc. during the class period referenced in the complaint:

| Date | Purchased or Sold | No. of Shares | Price per Share |
|------|-------------------|---------------|-----------------|
| 11/2006 | Purchase (Still own) | 4000 | #5.25 |

5.      I have not served as a class representative in a federal securities case in the last three years.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.      The matters stated in this certification are true to the best of my current knowledge, information and belief.

8.      I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED:      October 10, 2007

_____
MICHAEL MILLER

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required fir the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MICHAEL MILLER, Individually And On Behalf Of All Others Similarly Situated,

## DEFENDANTS

Dyadic International, Inc., Mark A. Emalfarb, Stephen J. Warner, Harry Z. Rosengart, Richard J. Berman, Robert B. Shapiro and Glenn E. Nedwin

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Palm Beach**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel: 561-392-4750

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN, ST. LUCIE   INDIAN RIVER,   OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

07CV 80948   WPD /RSR

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to district Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A REAL PROPERTY**
☐ 210 Land Condemnation
B ☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
B ☐ 510 Motions to Vacate Sentence
HABEAS CORPUS
B ☐ 530 General
A ☐ 535 Death Penalty
B ☐ 540 Mandamus & Other
B ☐ 550 Civil Rights
B ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
B ☐ 610 Agriculture
B ☐ 620 Other Food & Drug
B ☐ 625 Drug Related Seizure of Property 21 USC 881
B ☐ 630 Liquor Laws
B ☐ 640 R R & Truck
B ☐ 650 Airline Regs
B ☐ 660 Occupational Safety/Health
B ☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt Relations
☐ 730 Labor/Mgmt Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
A ☐ 791 Empl Ret Inc Security Act

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
A ☐ 870 Taxes (U S Plaintiff or Defendant
A ☐ 871 IRS – Third Party 26 USC 7609

**A OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
B ☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions
A OR B

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. § 78j(b) (securities fraud)

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____   DOCKET NUMBER _____

DATE
October 12, 2007

SIGNATURE OF ATTORNEY OF RECORD
_[signature]_

FOR OFFICE USE ONLY
RECEIPT #  723277   AMOUNT  350⁰⁰   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____