### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL MILLER, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 07-80948-CIV-<br>) Dimitrouleas<br>) |
| v. | ) ) |
| DYADIC INTERNATIONAL, INC., RICHARD J. BERMAN, MARK A. EMALFARB, RUFUS GARDNER, WAYNE MOOR, HARRY Z. ROSENGART, AND STEPHEN J. WARNER, | ) Magistrate Judge Rosenbaum ) ) ) ) ) |
| Defendant. | ) ) ) |

### ANSWER AND AFFIRMATIVE DEFENSES OF
### DEFENDANT RUFUS GARDNER TO THE SECOND AMENDED CONSOLIDATED
### CLASS ACTION COMPLAINT

Defendant Rufus Gardner ("Gardner" or "Defendant") respectfully submits this Answer and Affirmative Defenses to the Second Amended Consolidated Class Action Complaint ("Second Amended Complaint").

### ANSWER TO NUMBERED PARAGRAPHS

1. Defendant admits that Lead Plaintiff purports to bring this action under the Securities Exchange Act of 1934 on behalf of all persons who purchased or acquired Dyadic securities from October 29, 2004, through April 23, 2007 (the "Class Period").

2. Defendant denies the first and fourth sentences of paragraph 2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of paragraph 2. Defendant denies any remaining allegations in paragraph 2.

3. Defendant admits that after an internal investigation, Dyadic terminated Emalfarb as president and CEO. Defendant denies the remaining allegations in paragraph 4.

4. Defendant admits that, at the time that Emalfarb was on a leave of absence, Dyadic stated that it had abandoned its Asian operations. Defendant denies the remaining allegations in paragraph 4.

5. Admitted.

6. Defendant admits that Dyadic shares closed at $5.30 on the day before trading was halted and closed at $0.50 on January 17, 2008, the first day trading of Dyadic shares was reopened on the "Pink Sheets." Defendant denies the remaining allegations in paragraph 6.

7. Defendant admits that Lead Plaintiff purports to bring its claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8. Admitted.

9. The Defendant admits that venue is proper in this District and that Dyadic maintains its principal executive offices at 140 Intracoastal Pointe Drive, Suite 404, Jupiter, Florida, 33477. Defendant denies the remaining allegations in paragraph 9.

10. Defendant admits that he directly or indirectly used the United States mails, interstate telephone communications, and facilities of a national securities exchange but denies that he knowingly disseminated false or misleading statements.

11. Defendant admits that the Court appointed Capital Max as Lead Plaintiff in this action. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11.

12. Defendant denies that Dyadic currently has operations in Hong Kong and mainland China and that Dyadic's revenues are generated primarily through its sale of enzymes used in the textile business. Defendant admits the remaining allegations in paragraph 12.

13. Defendant admits that Puridet was based in Hong Kong. Defendant admits the allegations in the second sentence of paragraph 13 were true at the time Dyadic abandoned Puridet, but Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Puridet's current manufacturing or distributing activities or its

ownership of other companies.  Defendant admits that Puridet's financial results were incorporated into Dyadic's publicly filed financial results during the Class Period and that Puridet's sales accounted for approximately 40% of Dyadic's total sales in 2005 and 2006. Defendant denies the remaining allegations in paragraph 13.

    14.    Admitted.

    15.    Admitted.

    16.    Admitted.

    17.    Defendant admits that defendant Wayne Moor ("Moor") was CFO and Vice President of Dyadic from January 31, 2005, through the end of the Class Period.  Defendant denies the remaining allegations of paragraph 17.

    18.    Admitted.

    19.    Admitted.

    20.    No response to the statement in paragraph 20 is required.

    21.    No response to the statement in paragraph 21 is required.

    22.    Denied.

    23.    Defendant admits that the quote in paragraph 23 from the Dyadic April 24, 2007 Press Release is substantially accurate, but Defendant denies any characterization of the public statement referenced in paragraph 23, which is a document that speaks for itself.

    24.    Defendant admits that the language from the Dyadic May 1, 2007 Press Release is substantially accurate, but Defendant denies any characterization of the public statement referenced in paragraph 24, which is a document that speaks for itself.

    25.    Defendant admits that the quote in paragraph 25 from the Dyadic September 24, 2007 Press Release is substantially accurate, but Defendant denies any characterization of the public statement referenced in paragraph 25, which is a document that speaks for itself.

    26.    Defendant admits that the language from the Dyadic September 24, 2007 Press Release is substantially accurate, but Defendant denies any characterization of the public statement referenced in paragraph 26, which is a document that speaks for itself.

27. Defendant admits that Dyadic's former Audit Committee hired Moscowitz & Moscowitz, P.A., to conduct an independent investigation of the alleged improprieties at its Asian subsidiary and to determine whether any officers or employees of Dyadic participated in these improprieties and/or failed to disclose them.

28. Admitted.

29. Defendant admits that in 1998, Dyadic entered into negotiations with Puridet about a potential transaction and that Emalfarb negotiated with Robert Smeaton ("Smeaton") and other partners of Puridet. Defendant denies the remaining allegations of paragraph 29.

30. Defendant admits the allegations in the first sentence of paragraph 30. Defendant states that the basis for the remaining allegations in paragraph 30 are the notes from Hooper's March 23-25 visit ("Hooper's Notes"), which is a document that speaks for itself, and thus Defendant denies any characterization of Hooper's Notes. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30.

31. Defendant admits that the quotes from Hooper's Notes in paragraph 31 are substantially accurate, but Defendant denies any characterization of Hooper's Notes, which is a document that speaks for itself.

32. Defendant admits that the quote from a June 11, 1998 Arthur Andersen Hong Kong memorandum ("AA Memo") in paragraph 32 is substantially accurate, but Defendant denies any characterization of the AA Memo, which is a document that speaks for itself. Defendant denies the remaining allegations in paragraph 32.

33. Defendant admits the first sentence in paragraph 33. Defendant admits that the quote from a June 11, 1998 memorandum from Gavin Nesbitt to Hooper ("Nesbitt Memo") in the third sentence of paragraph 33 is substantially accurate, but Defendant denies any characterization of the Nesbitt Memo, which is a document that speaks for itself. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33.

34. Defendant is without knowledge or information sufficient to form a belief as to whether Hooper relayed "all information in 1998" to Emalfarb. Defendant denies the remaining allegations in paragraph 34.

35. Defendant admits that the quote in paragraph 35 from Emalfarb's October 20, 1998 correspondence with Smeaton is substantially accurate, but Defendant denies any characterization of the correspondence, which is a document that speaks for itself. Defendant denies the remaining allegations in paragraph 35.

36. Defendant admits that the quote in paragraph 36 from Tsang's email, dated May 17, 1999, is substantially accurate, but Defendant denies any characterization of the correspondence, which is a document that speaks for itself. Defendant denies the remaining allegations in paragraph 36.

37. Denied.

38. Defendant admits that Puridet booked some of its local sales in China into an entity called South Dragon Detergent Company or Fushing South Dragon Detergent Company, that Puridet people often referred to it as "SD" or "South Dragon," and that South Dragon appeared to be a customer of Puridet. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38.

39. Defendant admits that the quote from a document found on Tsang's computer is substantially accurate, but Defendant denies any characterization of the document, which is a document that speaks for itself.

40. Defendant admits that the quote from Gardner's October 2001 notes is substantially accurate, but Defendant denies any characterization of the document, which is a document that speaks for itself.

41. Defendant admits that he received monthly reports from Hong Kong accountant Paul W.C. Ho & Co., but Defendant denies any characterization of those reports, which are documents that speak for themselves. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 41.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the second sentence of paragraph 41 as it relates to Hooper.  Defendant admits that Defendant communicated with Emalfarb regarding Puridet and South Dragon, but Defendant denies the remaining allegations in the second sentence of paragraph 41.  Defendant admits the third sentence of paragraph 41.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the fourth sentence of paragraph 41.

42. Denied.

43. Defendant admits that the quote from Emalfarb's November 8, 2001 letter to Smeaton is substantially accurate, but Defendant denies any characterization of the letter, which is a document that speaks for itself.

44. Defendant admits that the quote in paragraph 44 from Smeaton's email dated November 11, 2001 to Gardner, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.  Defendant denies the remaining allegations of paragraph 44.

45. Defendant admits that the quote in paragraph 45 from Smeaton's email dated November 19, 2001 to Gardner, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

46. Defendant admits that the quote in paragraph 46 from Smeaton's email dated November 27, 2001 to Gardner and Hooper, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

47. Defendant admits that the quote in paragraph 47 from Gardner's email dated November 29, 2001 to Smeaton, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

48. Defendant admits that the quote in paragraph 48 from Smeaton's email dated November 29, 2001 to Gardner, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

49.     Defendant admits that the quote in paragraph 49 from Emalfarb's email dated September 5, 2002 to Smeaton, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

50.     Defendant admits that the quote in paragraph 50 from Hooper's email dated September 10, 2002 to Smeaton, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

51.     Defendant admits that the quote in paragraph 51 from Hooper's email dated October 23, 2002 to Emalfarb, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

52.     Defendant admits that the quote in paragraph 52 from Hooper's email dated October 24, 2002 to Emalfarb, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

53.     Defendant admits that the quote in paragraph 53 from Hooper's email dated November 13, 2002 to Smeaton, is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

54.     Defendant admits that the quote in the first sentence of paragraph 54 from Smeaton's email reply to Hooper's November 13, 2002 email is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself. Defendant admits the second sentence of paragraph 54.

55.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     Defendant admits that the quote in paragraph 56 from Emalfarb's email to Smeaton is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

57.     Defendant admits that the quote in paragraph 57 from Emalfarb's July 29, 2003 email to Smeaton is substantially accurate, but Defendant denies any characterization of the

email, which is a document that speaks for itself.  Defendant denies the remaining allegations of paragraph 57.

58. Defendant admits that the quote in paragraph 58 from Smeaton's August 19, 2003 email to Emalfarb is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.

59. Denied.

60. Defendant denies the characterization that the Pui Shing receivable "immediately" became Puridet's largest account receivable.  Defendant admits the remaining allegations of paragraph 60.

61. As shown on the face of paragraph 61, the basis of the allegations in paragraph 61 is a 2005 Form 10KSB filed by Dyadic, which is a document that speaks for itself, and thus Defendant denies any characterization of that document.

62. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65.

66. Defendant admits the first sentence of paragraph 66.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66.  Defendant further answers that Shook did not share his knowledge about Puridet with anyone at Dyadic.

67. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68.     Defendant admits the first sentence of paragraph 68. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68. Defendant further answers that Michael Kent did not report his knowledge about Puridet to anyone at Dyadic.

69.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70.     Defendant denies the first sentence of paragraph 70 as it relates to Gardner. Defendant is without knowledge or information sufficient to form a belief as to whether Emalfarb made the statement alleged in the first sentence of paragraph 70. Defendant admits that Emalfarb sent a fax to Smeaton dated March 2, 1998, referenced in the second and third sentence of paragraph 70, but denies any characterization of that fax, which is a document that speaks for itself. Defendant denies any characterization of Hooper's Notes referenced in the fourth sentence of paragraph 70, which is a document that speaks for itself. Defendant denies any characterization of Tabloff's email to Emalfarb and Hooper dated August 14, 2000, referenced in the fifth sentence of paragraph 70, which is a document that speaks for itself.

71.     Denied.

72.     Defendant admits that when Dyadic became a public company, it became responsible for certain public filings with the SEC. Defendant states that the basis of the allegations and the quote in the second sentence of paragraph 72 is a public statement made by Dyadic, which is a document that speaks for itself, and thus Defendant denies any characterization of that document. Defendant denies the remaining allegations in paragraph 72.

73.     Defendant admits that Moor became CFO of Dyadic on January 31, 2005.

74.     Defendant admits the first two sentences of paragraph 74. Defendant denies the third sentence of paragraph 74.

75.     Defendant admits that the quote in paragraph 75 from Moor's March 16, 2005 email to Emalfarb is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself. Defendant is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75.

76.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

78.     Defendant admits that the quote in paragraph 78 from an email from Moor to Tsang is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 78.

79.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 80.  Defendant denies the third sentence as it relates to Gardner, and is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 that relate to Emalfarb and Tsang. Defendant is without knowledge or information sufficient to form a belief as to the truth of the fourth sentence in paragraph 80.

81.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

82.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83.     Defendant admits that the quote in paragraph 83 from an email from Smeaton to Moor and others is substantially accurate, but Defendant denies any characterization of the email, which is a document that speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 83.

84. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84.

85. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85.

86. Defendant admits the first sentence of paragraph 86. Defendant denies any characterization of the email referenced in paragraph 86, which is a document that speaks for itself.

87. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87.

88. Defendant admits the first and second sentences of paragraph 88. Defendant denies any characterization of the email referenced in paragraph 88, which is a document that speaks for itself.

89. Defendant admits the first and third sentences of paragraph 89. Defendant denies any characterization of the email referenced in paragraph 89, which is a document that speaks for itself.

90. Defendant admits the first and second sentences of paragraph 90. Defendant denies the remaining allegations in paragraph 90 as to Dyadic and is without knowledge or information as to Ernst & Young's actions.

91. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

92. Admitted.

93. Denied.

94. Defendant denies any characterization of the Dyadic 8-K and April 24, 2007 Press Release referenced in paragraph 94, which are documents that speak for themselves. Defendant denies the remaining allegations in paragraph 94.

95. Defendant denies any characterization of the Form 10-QSB filed on November 15, 2004 referenced in paragraph 95, which is a public document that speaks for itself. Defendant

denies the remaining allegations in the first sentence of paragraph 95.  Defendant admits the second sentence of paragraph 95.

96.     Defendant admits that the quote in paragraph 96 from the January 24, 2005 registration statement amendment referenced in paragraph 96 is substantially accurate but denies any characterization of the January 24, 2005 registration statement amendment, which is a public document that speaks for itself.  Defendant denies the remaining allegations in the first and second sentences of paragraph 96.  Defendant admits the last sentence of paragraph 96.

97.     Defendant denies any characterization of the Form 10-KSB filed on April 15, 2005, referenced in paragraph 97, which is a public document that speaks for itself.  Defendant admits the document was signed as stated in the second sentence of paragraph 97.  Defendant denies the remaining allegations in paragraph 97.

98.     Defendant denies any characterization of the proxy statement filed on May 2, 2005, referenced in paragraph 98, which is a public document that speaks for itself.  Defendant denies the remaining allegations in paragraph 98.

99.     Defendant denies any characterization of the Form 10-QSB filed on May 17, 2005, referenced in paragraph 99, which is a public document that speaks for itself.  Defendant admits the document was signed as stated in the second sentence of paragraph 99.  Defendant denies the remaining allegations in paragraph 99.

100.    Defendant denies any characterization of the Form 10-QSB filed on August 15, 2005, referenced in paragraph 100, which is a public document that speaks for itself.  Defendant admits the document was signed as stated in the second sentence of paragraph 100.  Defendant denies the remaining allegations in paragraph 100.

101.    Defendant denies any characterization of the Form 10-QSB filed on November 14, 2005, referenced in paragraph 101, which is a public document that speaks for itself.  Defendant admits the document was signed as stated in the second sentence of paragraph 101.  Defendant denies the remaining allegations in paragraph 101.

Case 9:07-cv-80948-WPD   Document 200   Entered on FLSD Docket 10/15/2009   Page 13 of 18

- 13 -

102.	Defendant denies any characterization of the proxy statement filed on April 28, 2006, referenced in paragraph 102, which is a public document that speaks for itself. Defendant denies the remaining allegations in paragraph 102.

103.	Defendant denies any characterization of the Form 10-KSB filed on March 29, 2006, referenced in paragraph 103, which is a public document that speaks for itself. Defendant admits the document was signed as stated in the second sentence of paragraph 103. Defendant denies the remaining allegations in paragraph 103.

104.	Defendant admits that the quote in paragraph 104 from the May 4, 2006 Press Release referenced in paragraph 104 is substantially accurate but denies any characterization of the press release, which is a public document that speaks for itself. Defendant denies the remaining allegations in paragraph 104.

105.	Defendant denies any characterization of the Form 10-QSB filed on May 15, 2006, referenced in paragraph 105, which is a public document that speaks for itself. Defendant admits the document was signed as stated in the second sentence of paragraph 105. Defendant denies the remaining allegations in paragraph 105.

106.	Defendant admits that the quote from the August 11, 2006 Press Release referenced in paragraph 106 is substantially accurate but deny any characterization of either the August 11, 2006 Press Release or the Dyadic Form 10-QSB referenced in paragraph 106, which are documents that speak for themselves. Defendant admits the Form 10-QSB was signed as stated in the second sentence of paragraph 106. Defendant denies the remaining allegations in paragraph 106.

107.	Defendant denies any characterization of the Form 10-QSB filed on August 11, 2006, referenced in paragraph 107, which is a public document that speaks for itself.

108.	Defendant denies any characterization of the Form 10-QSB filed on November 9, 2006, referenced in paragraph 108, which is a public document that speaks for itself. Defendant admits the document was signed as stated in the second sentence of paragraph 108. Defendant denies the remaining allegations in of paragraph 108.

109. Defendant admits the first sentence of paragraph 109. Defendant denies any characterization of the November 20, 2006 Press Release referenced in paragraph 109, which is a document that speaks for itself. Defendant denies the remaining allegations in paragraph 109.

110. Defendant admits that the quotes in paragraph 110 from the Securities Purchase Agreement between Dyadic and Abengoa Bioenergy R&D, Inc., referenced in paragraph 110, are substantially accurate but denies any characterization of the Securities Purchase Agreement, which is a document that speaks for itself. Defendant admits the Form S-3/A was signed as stated in the first sentence of paragraph 110. Defendant denies the remaining allegations in paragraph 110.

111. Defendant denies any characterization of the Form 10-KSB filed on April 2, 2007, referenced in paragraph 111, which is a public document that speaks for itself. Defendant admits the document was signed as stated in the second sentence of paragraph 111. Defendant denies the remaining allegations in of paragraph 111.

112. Denied.

113. Defendant admits that Lead Plaintiff purports to bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased or acquired Dyadic securities during the Class Period and who were damaged thereby, excluding Defendant, the officers and directors of Dyadic at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

114. Defendant denies the allegations in the first sentence of paragraph 114. Defendant admits the remaining allegations in the paragraph.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. The allegations of paragraph 119 state a legal conclusion to which no response is required.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. The first and second sentences of paragraph 137 state legal conclusions to which no response is required.  Defendant denies the remaining allegations of paragraph 137.

138. Denied.

139. Denied.

140. Defendant admits that from February 2005 to July 2006, Gardner, in his capacity as Controller, reported directly to Moor, the CFO.  Defendant denies the remaining allegations in paragraph 140.

141.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141.

142.    No response is required to the jury demand in paragraph 142.

## AFFIRMATIVE DEFENSES

Defendant asserts the following Affirmative Defenses to the Second Amended Complaint:

1. The Second Amended Complaint fails to state a claim upon which relief may be granted.

2. The statements challenged by Lead Plaintiff were not false or misleading.

3. The statements challenged by Lead Plaintiff were not material.

4. Defendant did not act with scienter.

5. Defendant was not the proximate cause of any injury, loss or damages suffered or claimed by Lead Plaintiff.

6. Lead Plaintiff's damages or injuries, to the extent that they exist, were caused by supervening or intervening events unconnected to Defendant.

                                    Respectfully submitted,

Dated:  October 15, 2009                */s/ Andrew Lazerow*
                                    John S. Trimper, Esq.
                                    Florida Bar No. 326798
                                    JONES, FOSTER, JOHNSTON & STUBBS, P. A.
                                    505 South Flagler Drive
                                    Suite 1100
                                    West Palm Beach, Florida 33401
                                    Phone: 561-650-0455
                                    Fax: 561-650-0490
                                    jtrimper@jones-foster.com

                                    Peter Unger (*pro hac vice*)
                                    Andrew D. Lazerow (*pro hac vice*)
                                    Martin F. Cunniff (*pro hac vice*)
                                    HOWREY, LLP
                                    1299 Pennsylvania Ave. NW
                                    Washington, DC  20004
                                    Phone: (202) 783-0800
                                    Fax: (202) 383-6610
                                    ungerp@howrey.com
                                    lazerowa@howrey.com
                                    cunniffm@howrey.com

                                    *Attorneys for Rufus Gardner*

## CERTIFICATE OF SERVICE

     I hereby certify that on October 15, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

                                  By:    /s/ *John S. Trimper*
                                              John S. Trimper