UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL MILLER, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DYADIC INTERNATIONAL, INC., RICHARD J. BERMAN, MARK A. EMALFARB, RUFUS GARDNER, WAYNE MOOR, HARRY Z. ROSENGART, and STEPHEN J. WARNER, )<br>)<br>Defendants. ) | Case No. 07-80948-CIV-Dimitrouleas |

**LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

This is a typical securities fraud class action—purchasers of Dyadic's stock allege that Defendants knowingly and recklessly hid damaging information during the Class Period, resulting in an inflated purchase price. Courts routinely certify securities fraud actions because they are prototypical class actions. This case is no different. Lead Plaintiff moves the Court to certify the following Class:

> All persons who purchased or acquired Dyadic International, Inc. securities from October 29, 2004, through April 23, 2007 (the "Class Period"). Excluded from the Class are the Defendants herein, the directors, officers, and employees of Dyadic, the members of each individual Defendant's family, any entity in which any Defendants have a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors- and predecessors-in-interest, or assigns of any such excluded party.

I.      OVERVIEW OF THE CASE

On April 24, 2007, Dyadic publicly disclosed that it had "discovered potentially material operational and financial improprieties at its Hong Kong and mainland China operations" and that every single one of its previous SEC filings "should no longer be relied upon."[1] The American Stock Exchange halted trading of Dyadic stock and eventually delisted it, landing Dyadic on the Pink Sheets where it did not resume trading for another eight months.[2] When trading finally reopened on the Pink Sheets in January 2008, Dyadic's share price had dropped from $5.30 the day its shares last traded to a mere $0.50 per share.[3]

During the halted trading period, Dyadic publicly disclosed its internal investigation into the problems in Asia. Dyadic concluded that its Asian subsidiary's largest customer, "Pui Shing," was a dummy company, strategically used by Dyadic to accumulate product sales to numerous small cash-paying Chinese customers who sought to avoid the required reporting obligations associated with the payment of value-added-taxes ("VAT") under Chinese law.[4] Dyadic also concluded at that time that Mark Emalfarb, Dyadic's CEO, had known of Puridet's improprieties for years, but hid this knowledge from the public.[5] Given these conclusions, the Board of Directors fired Emalfarb for cause.[6]

Dyadic management had battled with Puridet employees for years over financial reporting and accounting concerns. The Audit Committee and CFO Wayne Moor ("Moor") knew

---

[1] *See* Ex. 1, Dyadic Press Release, Apr. 24, 2007.

[2] Second Am. Compl. [DE 150] ¶¶ 5–6.

[3] *Id.* ¶ 6.

[4] *Id.* ¶ 26.

[5] *Id.* ¶ 25.

[6] *Id.* ¶ 3.

they had no control over Puridet and that its managers were engaging in accounting chicanery.[7] But instead of putting in place adequate controls over Puridet, or firing those responsible for the fraud, Moor and the Audit Committee did nothing and represented to the public that they were adequately monitoring Puridet.[8] After the news broke, the SEC conducted its own investigation of Dyadic and on June 4, 2009, found that Dyadic violated the SEC Books, Records, and Internal Control Provisions by violating various accounting principles and by failing to implement internal accounting controls.[9]

By October 2007, several plaintiffs filed suit and this Court appointed Capital Max, Inc. the Lead Plaintiff in this litigation under the PSLRA.[10] That statute assumes that securities actions will eventually be certified as class actions and so puts in place a procedure for selecting the Lead Plaintiff and eventual class representative.[11] In appointing Capital Max the Lead Plaintiff, the Court found that Capital Max had the "largest financial interest" of any applicant and that it "otherwise satisfied" the relevant requirements of Rule 23, typicality and adequacy.[12] Now, since the last of the Defendants' motions to dismiss have been denied and they have answered the Second Amended Complaint, Lead Plaintiff seeks certification of the injured Dyadic stock purchasers.

---

[7] *Id.* ¶¶ 29–36, 38–41, 43–70, 72–83.

[8] *Id.*

[9] *See* Ex. 2, SEC Order.

[10] Order Appointing Lead Pl. & Approving Lead Counsel [DE 73] Apr. 28, 2008.

[11] *See* 15 U.S.C. 78u-4(a)(3).

[12] Order [DE 73] at 10–11.

## II.     LEGAL ANALYSIS

Rule 23 governs class certification. "The decision to certify is within the broad discretion of the district court."[13] Although Lead Plaintiff has the burden of showing that the requirements of Rule 23 have been satisfied, "class action treatment is 'particularly appropriate' for securities fraud claims, and under such circumstances courts should err in favor of certifying a class."[14] This securities class action is no different, and Lead Plaintiff respectfully requests that the Court certify this case as a class action.

### A.     The four prerequisites of Rule 23(a) are satisfied.

Rule 23(a) contains four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. In order to obtain class certification, Lead Plaintiff must demonstrate that all four prerequisites of Rule 23(a) are satisfied and that at least one element of Rule 23(b) is met.

#### 1.     The Class is numerous.

Class certification is appropriate where the class is so numerous that joinder of all class members would be impractical.[15] The test requires a showing of impracticality, not impossibility. Precise enumeration of the number of class members is unnecessary,[16] as Plaintiff "must only establish that joinder is impracticable through 'some evidence or reasonable estimate of the

---

[13] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

[14] *Demarco v. Robertson Stephenson Inc.*, No. 03-590, 2005 WL 120233, at *9 (S.D.N.Y. Jan. 20, 2005); *see also In re Amerifirst Secs. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in any doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.").

[15] *See D.W. by M. J. ex rel. D.W. v. Poundstone*, 165 F.R.D. 661 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993); *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979); 1 NEWBERG ON CLASS ACTIONS 3d § 3.04 (1992).

[16] *Fifth Moorings Condo.*, 81 F.R.D. at 716; *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229, 232 (M.D. Fla. 1993).

4

number of purported class members.'"[17] There is "no definite standard as to the size a given class must attain in order to satisfy Rule 23(a)(1),"[18] but this Circuit recognizes that 40 members satisfies the numerosity requirement.[19] "[W]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity . . . ."[20]

> Here Lead Plaintiff seeks to certify the following Class:
>
> All persons who purchased or acquired Dyadic International, Inc. securities from October 29, 2004, through April 23, 2007. Excluded from the Class are the Defendants herein, the directors, officers, and employees of Dyadic, the members of each individual Defendant's family, any entity in which any Defendants have a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors- and predecessors-in-interest, or assigns of any such excluded party.

At the beginning of the Class Period, Dyadic had 22 million shares of common stock issued and outstanding.[21] By the end of the Class Period, that number had grown to approximately 30 million shares as of March 28, 2007.[22] Based on this evidence, a reasonable estimate of the size of the Class is at least in the hundreds, probably the thousands, of members.

"Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."[23] Here the members of the proposed Class are

---

[17] *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. 1981)).

[18] *Tapken v Brown*, No. 90-691, 1992 WL 178984, at *27 (S.D. Fla. March 13, 1992).

[19] *See AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 680–81 (N.D. Ala. 2005) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *Kuehn v. Cadle Co.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007); *see also Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (satisfaction of numerosity requirement presumed at 40 class members).

[20] *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

[21] *See* Ex. 3, Excerpt of Dyadic 2004 10-K.

[22] *See* Ex. 4, Excerpt of Dyadic 2006 10-K.

[23] *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

geographically dispersed, making joinder impractical. Dyadic investors are located all over the United States and the world. From the Lead Plaintiff motions alone, Plaintiffs know that Class members reside in such diverse locales as Hawaii; Paris, France; and even Bahrain.[24] Accordingly, the numerosity requirement of Rule 23 is met in this case.

### 2. Lead Plaintiff's claims present questions of law and fact that are common to the Class.

Rule 23(a)(2) requires that there be at least one issue affecting all or a significant number of proposed class members. The threshold of commonality is "not high."[25] The rule does not require that all class members have identical legal claims,[26] nor does it require that *all* the questions of law or fact in a case be common.[27] The focus is on whether the representative's claims arise from the same course of conduct that gives rise to the class's claims, and whether the claims are based on the same legal theory.[28] Where allegations of wrongdoing involve a common course of conduct that allegedly affected all class members in a substantially similar way, the class members' claims will typically involve common questions of law or fact.[29] The

---

[24] Order [DE 73] at 4; Capital Max & ABC's Joint Mot. Appointment Co-Lead Plfs.' [DE 36] at 3;

[25] *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003); *Campos v. I.N.S.*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citing *Forbrush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).

[26] *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

[27] *See Singer v. AT&T Corp.,* 185 F.R.D. 681, 687 (S.D. Fla. 1998); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. at 325; *Haitian Refugee Ctr., Inc. v. Nelson*, 694 F. Supp. 864, 877 (S.D. Fla. 1988); *Fifth Moorings Condo.,* 81 F.R.D. at 717.

[28] *See Kreuzfeld*, 138 F.R.D. at 599 (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982) ("the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members.").

[29] *Haitian Refugee*, 694 F. Supp. at 877; *Singer*, 185 F.R.D. at 688; *see also In re Amerifirst Secs. Litig.*, 139 F.R.D. at 428.

Eleventh Circuit agrees that where allegations of wrongdoing arise from a common practice or course of conduct, the class members' claims will involve common questions or law and fact.[30]

In a securities fraud action, commonality is almost a given. Lead Plaintiff here seeks to prove that Defendants omitted or made misleading material statements, and that course of conduct will be common to all members of the Class. Defendants' alleged false statements and omissions were uniformly made to all Class members as set forth in the Second Amended Complaint, and involve, among other things:

(i) whether Defendants' press releases, public filings, and public statements concerning Dyadic's financial and operating results and its Asian subsidiary, contained misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, not misleading;

(ii) whether Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts in the documents, press releases, public filings, and public statements;

(iii) whether the market price of Dyadic during the Class Period was artificially inflated due to the material misstatements or omissions complained of herein; and

(iv) whether the class members have sustained damages, and, if so, the appropriate measure thereof.

These questions of law and fact, common to each class member, satisfy Rule 23(a)(2).

### 3. Lead Plaintiff's claims are typical of those presented by the Class.

Rule 23(a)(3) requires that Lead Plaintiff's claims, as the proposed class representative, are typical of the claims of other members of the class. "The central inquiry in determining whether a proposed class has satisfied the 'typicality' requirement is whether the 'class

---

[30] *See Kirkpatrick*, 827 F.2d at 718; *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983); *see also Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992); *Powers v. Stuart-James Co., Inc.*, 707 F. Supp. 499 (M.D. Fla. 1989); *see also Walco*, 168 F.R.D. at 325 (where plaintiff alleges unified scheme to defraud, "common questions are usually found").

representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury's as the class members.'"[31]

Stated another way, typicality is satisfied where, as here, a plaintiff's claims "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."[32] In determining typicality, the court should "focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large."[33] The "mere presence of factual distinctions will not defeat typicality."[34] Plaintiff's claims need only be typical, not identical. The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore typicality will not be destroyed by factual variations.[35]

This Court already concluded that Capital Max satisfied the typicality requirement during the Lead Plaintiff briefing, holding that its claims "share the same 'essential characteristics as the class at large.'"[36] The Court reasoned that Capital Max seeks to represent a Class of persons

---

[31] *Leszczynski*, 176 F.R.D. at 672 (quoting *E. Tex. Motor Freight Sys. v Rodriguez*, 431 U.S. 395, 403 (1977)).

[32] *Walco*, 168 F.R.D. at 326. *See also CV Reit*, 144 F.R.D. at 697 (typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based upon the same legal theories).

[33] *Campos,* 188 F.R.D. at 661 (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)). *See also Green v. Mansour*, 474 U.S. 64 (1985); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Kennedy*, 710 F.2d at 717; *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'").

[34] *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1998).

[35] *See Kornberg,* 741 F.2d at 1337.

[36] Order [DE 73] at 11 (quoting *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278–79 n.14 (11th Cir. 2000)).

who, like itself, "(a) purchased Dyadic securities, (b) at market prices artificially inflated as a result of Defendants' violations of the securities laws, and (c) suffered damages thereby." None of those factors has changed. Because Lead Plaintiff seeks to prove that Defendants "committed the same unlawful acts in the same method against an entire class," the typicality requirement is satisfied here.[37]

### 4. Lead Plaintiff and Lead Counsel will fairly and adequately represent the interests of the Class.

Like the three preceding requirements of Rule 23(a), the adequacy requirement found in Rule 23(a)(4), which requires that Lead Plaintiff demonstrate (1) that "the plaintiff's attorney is qualified, experienced and will competently and vigorously prosecute the suit;" and (2) "that the interest of the class representative is not antagonistic to or in conflict with other members of the class,"[38] is satisfied here. The Court already found that Capital Max and its counsel met the adequacy requirement during the Lead Plaintiff proceedings.[39]

#### a. The Lead Plaintiff

Capital Max will protect and advance the interests of the Class, and its interests are not antagonistic to those of the Class. While it is not necessary for Lead Plaintiff to "demonstrate to any particular degree that it will pursue with vigor the legal claims of the class,"[40] Lead Plaintiff is prepared to pursue the Class's claims to the fullest extent possible.

Lead Plaintiff is an adequate class representative. It suffered substantial losses as a result of the fraud discussed above, and has aggressively prosecuted this case on behalf of the putative

---

[37] *Kennedy*, 710 F.2d at 717.

[38] *Powers v. Gov't. Employees Ins. Co.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998) (citing *Griffin*, 755 F.2d at 1533).

[39] Order [DE 73] at 11 (concluding that adequacy requirements were met because "Capital Max has proven that it is willing to participate in discovery and has hired competent and adequate class counsel").

[40] *Kirkpatrick*, 827 F.2d. at 727.

9

Class. Capital Max, acting as investment advisor for its clients, purchased a total of 145,300 shares of Dyadic securities during the Class Period, 72,500 of which it still holds, and suffered approximate losses of $359,857 as a result of Defendants' misconduct.[41] Since this case has been pending, Capital Max has been a staunch advocate on behalf of the Class and has vigorously pursued this case. Franck Prissert, CEO of Capital Max, has reviewed the complaints, mediation statements for both parties, and prepared and appeared for the deposition for the Lead Plaintiff battle. (Order [DE 85 at 2].)

"The requirement that claims or defenses of the representative party be typical of the claims or defenses of the class is satisfied as long as the representative has no interests that conflict with members of the class."[42] This Court has already found that Capital Max's interests are not antagonistic with other class members and that it has a sufficient interest in the outcome of this case to ensure vigorous advocacy.[43] It also found that Capital Max had proven that it was willing to participate in discovery.[44]

### b. Lead Counsel

The second prong of the test for whether there is adequate representation is also satisfied. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney."[45]

---

[41] *See* Ex. A to Capital Max's Mot. Lead Plf. [DE 10-2].

[42] *See Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.,* 57 F.R.D. 555, 565 (N.D. Ill. 1973) (citing *Cannon v. Tex. Gulf Sulphur*, 47 F.R.D. 60, 63 (S.D.N.Y. 1969)).

[43] Order [DE 73] at 11.

[44] *Id.*

[45] 1 Newberg on Class Actions 3d (1992) § 3.24 at 3-133 n. 353; *see also Kirkpatrick*, 827 F.2d. at 726 (question of adequacy of Plaintiff most often "involve[s] questions of whether Plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether Plaintiffs

Here, Lead Counsel, Susman Heffner & Hurst LLP and its Liaison Counsel Kozyak Tropin & Throckmorton, P.A. "have extensive experience in successfully prosecuting complex securities actions and have frequently appeared in major actions in this and other courts."[46] In addition, the efforts of Plaintiffs' counsel in this case thus far show that counsel are committed to the vigorous prosecution of this action and possess the skills necessary for such efforts. Thus far, Plaintiffs' counsel have prepared an original complaint,[47] the consolidated class action complaint,[48] defended motions to dismiss with regard to that complaint,[49] then amended that complaint,[50] and then again defended another round of motions to dismiss with regard to the Second Amended Consolidated Class Action Complaint.[51] Lead and Liaison Counsel have also reviewed over 120,000 pages of discovery and attended two mediations in an effort to settle this matter. The Court should accordingly appoint Susman Heffner & Hurst LLP and Kozyak Tropin & Throckmorton, P.A. as lead and liaison class counsel, respectively.

### B. Lead Plaintiff's claims are maintainable under Rule 23(b)(3).

In addition to satisfying Rule 23(a), class representatives must also satisfy one of the three subsections of Rule 23(b).[52] In securities fraud actions, like this case, the requirements of Rule 23(b)(3) are routinely met.[53]

---

have interests antagonistic to those of the rest of the class") (quoting *Griffin v. Carlin*, 755 F. 2d 1516, 1532 (11th Cir. 1985)).

[46] Order Apr. 18, 2008 [DE 73] at 18.

[47] *See* Ex. 2 to Memo. Supp. Mot. Consolidate [DE 10].

[48] Amended Consolidated Class Action Complaint [DE 92].

[49] Rosengart & Moor's Mot. Dismiss [DE 110]; Warner's Mot. Dismiss [DE 111–12], Dyadic and Emalfarb's Mot. Dismiss [DE 115–16].

[50] Second Am. Consolidated Class Action Compl. [DE 150].

[51] Warner's Mot. Dismiss [DE 164–65]; Gardner's Mot. Dismiss [DE 167, 170]; Moor, Rosengart, & Berman's Mot. Dismiss [DE 175].

[52] *See Powers*, 192 F.R.D. at 318.

        **1.**      **Common questions of law and fact predominate.**

Common questions of law and fact are generally held to predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication.[54] Predominance is established where class issues subject to generalized proof predominate over those issues that require individual proof.[55] "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."[56] "In order to determine whether common questions predominate, '[the court is] called upon to examine the cause[s] of action asserted in the complaint on behalf of the putative class.'"[57]

        **a.**      **Federal securities claims against Dyadic and the Individual Defendants**

Common questions of law or fact clearly predominate in this case. As alleged in the Second Amended Complaint, Dyadic harmed the putative class by failing to reveal the operating and financial improprieties of Puridet, thereby causing Dyadic stock to trade at artificially inflated prices.[58] Indeed, as the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[59] As the Eleventh Circuit explained in *Kirkpatrick v. J. C. Bradford & Co.*, "a single conspiracy and fraudulent scheme against a large number of individuals" is "particularly appropriate" for class

---

[53] *In re Ins. Mgmt. Solutions Group Inc.*, 206 F.R.D. 514, 518 (M.D. Fla. 2002) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.)

[54] *See* 7A Wright, Miller & Kane, Fed. Prac. & Proc. § 1778 at 528.

[55] *Kerr v. West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir. 1989).

[56] *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89, 93 (S.D.N.Y. 1981)); *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. at 234.

[57] *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

[58] Second Am. Compl. [DE 150].

[59] *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2250 (1997).

action treatment.[60] And the fact that different investors lost different sums of money does not bar class certification.[61] Moreover, certifying a class when there is an overriding common issue saves judicial resources by avoiding duplicate proceedings and proof.

In addition, common questions predominate here because the Second Amended Complaint alleges a fraud-on-the-market theory, which presumes reliance and is ideally suited to class actions alleging securities fraud.[62] The Supreme Court expressly endorsed the fraud-on-the-market doctrine in *Basic, Inc. v. Levinson,* 485 U.S. 224, 227 (1988). The theory is based on the efficient-market hypothesis which assumes that material information about a company is immediately reflected in the price of the stock.[63] Because the market is interposed between the buyer and seller, there is no need to prove subjective reliance.[64] The presumption is most justified in the class action setting where the plaintiffs allege that misrepresentations or omissions affected security prices in a secondary market.[65] Because the stock price is artificially inflated by the alleged misstatements or omissions, the purchasers or sellers of the securities who rely on the price are defrauded because they buy or sell assuming the stock is based on proper market information.[66]

---

[60] 827 F.2d 718 (11th Cir. 1987).

[61] *Kornberg*, 741 F.2d at 1337; *CV Reit*, 144 F.R.D. at 696; *In re Amerifirst Secs. Litig.,* 139 F.R.D. at 428; *Infant Formula Antitrust Litig.*, 1992 WL 503465, at *6 (N.D. Fla. 1992) ("The issue of individual damages will not serve to defeat an otherwise valid class certification attempt."); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 326–27 (5th Cir. 1978) ("in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individualized clams for damage seems to offer no barrier to class certification on grounds of manageability.").

[62] *See Tapken*, 1992 WL 178984, at *29–30.

[63] *In re Sahlen & Assocs., Inc. Secs. Litig.*, 773 F. Supp. 342, 354 (S.D. Fla. 1991).

[64] *Id.*

[65] *Id.* at 355.

[66] *Id.*

So to prevail under the fraud on-the-market theory, a plaintiff must demonstrate that the defendants' misrepresentations and omissions caused an artificial inflation of the market value of the relevant stock.[67] A plaintiff need not prove individual reliance upon the particular misrepresentations or omissions of defendants.[68] Consequently, "under a 'fraud on the market' theory questions of individual reliance are not sufficient reason to deny class action status."[69] The Eleventh Circuit recognizes that "the fraud on the market theory finds its greatest justification when applied to class actions alleging fraudulent misrepresentation or omissions that affected security prices on a developed open market.[70]

In this case, Dyadic's shares were listed and actively traded on the American Stock Exchange during the Class Period,[71] which constitutes an open and efficient market.[72] And "numerous courts have held that stocks trading on AMEX are almost always entitled to the presumption."[73] Because Dyadic's common stock traded on an open and efficient market and the price of those shares reflected all publically available information about it, proof of actual reliance will not need to be proven for each Class member.

---

[67] *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 84–85 (M.D. Fla. 1977).

[68] *Id.* at 85.

[69] *Id.*

[70] *Lipton v. Documation Inc.*, 734 F.2d 740, 745 (11th Cir. 1984).

[71] Second Am. Compl. ¶ 114.

[72] *See, e.g.*, *In re Initial Public Offering Secs. Litig.*, 544 F. Supp. 2d 277, 297 n.133 (S.D.N.Y. 2008) ("[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or similar national market is a good indicator of efficiency."); *RMED Int'l v. Sloan's Supermarkets*, 185 F. Supp. 2d 389, 404–05 (S.D.N.Y. 2002) "[R]esearch has failed to reveal any case where a stock traded on the AMEX was found not to have been traded in an open and efficient market.").

[73] *RMED Int'l*, 185 F. Supp. 2d at 404–05.

### b.   Section 20(a) claim

To allege control person liability under Section 20(a) in this Circuit, a plaintiff must plead that (1) the controlled entity committed a primary violation of Section 10(b), (2) the control person or entity had the power to control the general business affairs of the controlled entity, and (3) the control person "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability."[74] In the Eleventh Circuit, a defendant is not required to have exercised this power to be liable under Section 20(a).[75] The plain language of the statute provides that the necessary control can be "indirect."[76] Moreover, SEC regulations define "control," "controlling" and "controlled by" as, "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[77] In this Circuit, Section 20(a) does not have a scienter requirement.[78]

Clearly, all of these elements may be proven on a class-wide basis, because they do not in any way involve Lead Plaintiff or members of the Class. Instead, the analysis focuses on the relationship between Dyadic and the individual Defendants. These facts will apply uniformly to

---

[74] *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001); *see also In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1356, 1359 (S.D. Fla. 2005).

[75] *See Binder v. Gordian Sec., Inc.*, 742 F. Supp. 663, 668 (N.D. Ga. 1990) (holding that defendant need not actually participate in challenged transaction, as such a requirement would render meaningless the concept of secondary "controlling person" liability); *Hoffend v. Villa*, 261 F.3d 1148, 1152 (11th Cir. 2001) (holding that term "controlling person" under Section 20(a) may include any person who has power to control conduct of another person who has violated securities laws).

[76] *See* 15 U.S.C. § 78t(a); *In re PSS World Med., Inc. Sec. Litig.*, 250 F. Supp. 2d 1335, 1351 (M.D. Fla. 2002).

[77] *See* 17 C.F.R. §240.12b-2; *see also In re Hamilton Bankcorp, Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1360 (S.D. Fla. 2002); *Fuechtman v. Mastec, Inc.*, 390 F. Supp. 2d 1264, 1268 (S.D. Fla. 2005) (finding control alleged against individual who was no longer executive at time of misconduct where he had at least power to indirectly control corporate policy through 40% ownership stake, had signed registration statement, and Form 10-K stated company was controlled by him).

[78] *See Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).

all claims by all Class members. Accordingly, certification of the Section 20(a) claim for class treatment is appropriate.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The second part of subsection (b)(3) mandates consideration of whether a class action is superior to other methods to resolve the claims. The superiority requirement is, by its terms, a comparative method that presumes the availability of other methods of adjudication,[79] and that assumes that the burden is on the defendant to establish the lack of superiority.[80] Therefore, in order to establish a lack of superiority, Defendants must show that there are alternative, "superior" methods of resolving the claims of the class members.[81]

Fed. R. Civ. P. 23(b)(3) identifies four factors used to determine whether class treatment would be fair and efficient:

>  (i) the interest of members of the class in individually controlling the prosecution of separate actions;
> 
>  (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> 
>  (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> 
>  (iv) the difficulties likely to be encountered in the management of a class action.[82]

All of these factors militate in favor of maintenance of a class action in this case. As described above, the Class members are geographically dispersed. To require separate suits in this case

---

[79] *Partain v. First Nat'l. Bank of Montgomery*, 59 F.R.D. 56, 61 (M.D. Ala. 1973).

[80] Newberg on Class Actions, § 4.27, p. 4-108.

[81] *See Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 487 (E.D. Pa. 1977).

[82] Fed. R. Civ. P. 23(b)(3)(A)–(D).

would be "prohibitive and ridiculous and would deprive many of a remedy."[83] The management of the Class presents no particular difficulties. On the contrary, a multitude of individual lawsuits would duplicate proof of the predominant issues.

### 3. Other considerations under Rule 23(b)(3).

It also bears mentioning that the additional considerations under Rule 23(b)(3) support the conclusion that class certification will be superior to individual lawsuits. The costs and expenses of such individual actions, particularly when weighed against the individual recovery obtainable, would be prohibitive. Since no Class member possesses a sufficiently strong interest in individually controlling the prosecution of separate actions, and since the Class members "are in a poor position to seek legal redress . . . because such redress is disproportionately expensive," a class action is essential to bring them some measure of justice.[84]

Prosecution of this case as a class action will "achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated."[85] The common and predominant issues of liability discussed above relate specifically to Defendants and can be established at one time, in one proceeding, on a class-wide basis. The alternative to class certification would likely mean a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."[86]

---

[83] *See Kennedy,* 710 F.2d at 718.

[84] *In re Amerifirst Secs. Litig.*, 139 F.R.D. at 425. In addition, any Class member who wishes to control his own claim may "opt-out" of the Class under Rule 23(c)(2) in order to bring a separate action.

[85] *See Doglow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2nd Cir. 1970).

[86] *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968).

**III.   CONCLUSION**

Lead Plaintiff respectfully requests that the Court certify the Class pursuant to Rule 23(a) and (b)(3), designating Lead Plaintiff the Class representative and Lead and Liaison Counsel as class counsel.

Respectfully submitted,

By: /s/ Adam M. Moskowitz
Adam M. Moskowitz, Esq. FL. Bar No. 984280
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
*Liaison Counsel*

Matthew T. Heffner, Esq.
Glenn L. Hara, Esq.
SUSMAN HEFFNER & HURST, LLP
Two First National Plaza, Suite 600
Chicago, Illinois 60603
Tel: (312) 346-3466
Fax: (312) 346-2829
*Lead Counsel*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the foregoing has been filed with the Clerk of the Court using CM/ECF and served via transmission of Notices of Electronic generated by CM/ECF this 22nd day of February, 2010.

By: /s/ Adam M. Moskowitz
Adam M. Moskowitz

3733/101/310,141.1