# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| MICHAEL MILLER, Individually and on behalf of all others similarly situated,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>DYADIC INTERNATIONAL, INC., RICHARD J. BERMAN, MARK A. EMALFARB, RUFUS GARDNER, WAYNE MOOR, HARRY Z. ROSENGART, and STEPHEN J. WARNER,  )<br>)<br>)<br>)<br>)<br>)<br>Defendants.  )<br>) | CASE NO. 07-80948-CIV-DIMITROULEAS |

## DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................................1

FACTS ..............................................................................................................................................2

ARGUMENT ....................................................................................................................................4

I.  INDIVIDUAL QUESTIONS OF RELIANCE PREDOMINATE OVER
    COMMON QUESTIONS .....................................................................................................1

    A.  There Is No Evidence In The Record That The Market For
        Dyadic's Stock Between October 29, 2004 and May 26, 2005 Was
        Efficient ....................................................................................................................1

    B.  There Is No Evidence In The Record That The Market For
        Dyadic's Stock While It Traded On The AMEX Was Efficient ..............................1

II. ANY CLASS MUST BE LIMITED TO THOSE PERSONS WHO
    PURCHASED DYADIC STOCK ON THE AMEX ............................................................1

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

*In re Amerifirst Securities Litigation*,
    139 F.R.D. 423 (S.D. Fla. 1991)......................................................................................7

*Basic v. Levinson*,
    485 U.S. 224 (1988)....................................................................................................1, 4

*Bell v. Ascendant Solutions Inc.*,
    422 F.3d 307 (5th Cir. 2005) ............................................................................................8

*Camden Asset Mgmt., L.P. v. Sunbeam Corp.*,
    No. 99-8275, 2001 U.S. Dist. LEXIS 11022 (S.D. Fla. July 3, 2001).......................................6

*Cammer v. Bloom*,
    711 F. Supp. 1281 (D.N.J. 1989) ..............................................................................6, 7, 8

*Castano v. America Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ............................................................................................4

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003)......................................................................................7

*Griffin v. GK Intelligent Systems, Inc.*,
    196 F.R.D. 298 (S.D. Tex. 2000)......................................................................................7

*In re HealthSouth Corp. Securities Litigation*,
    257 F.R.D. 260 (N.D. Ala. 2009) ("HealthSouth I")..........................................................4, 6

*In re HealthSouth Corp. Securities Litigation*,
    261 F.R.D. 616 (N.D. Ala. 2009) ("HealthSouth II").........................................................5, 6

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ....................................................................................6, 7

*Martinez-Mendoza v. Champion International Corp.*,
    340 F.3d 1200 (11th Cir. 2003) ......................................................................................4

*In re MDC Holdings Sec. Litig.*,
    754 F. Supp. 785, 804 (S.D. Cal. 1990) ..........................................................................10

*In re NetBank, Inc. Securities Litigation*,
    259 F.R.D. 656 (N.D. Ga. 2009)......................................................................................6

*In re PolyMedica Corp. Securities Litigation*,

453 F. Supp. 2d 260 (D. Mass. 2006) ....................................................................................... 8

*Rutstein v. Avis Rent-A-Car System, Inc.*,
211 F.3d 1228 (11th Cir. 2000) ............................................................................................ 4

*In re Sahlen & Associates, Inc. Securities Litigation*,
773 F. Supp. 342 (S.D. Fla. 1991) ........................................................................................ 9

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ............................................................................................ 4

*In re Xcelera.com Sec. Litig.*,
430 F.3d 503, 514 (1st Cir. 2005) ........................................................................................ 6

## RULES

Fed. R. Civ. P. 23(a)(3) .............................................................................................................. 8

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 2, 4

Defendants Dyadic International, Inc. ("Dyadic"), Richard J. Berman, Mark A. Emalfarb, Rufus K. Gardner, Wayne Moor, Harry Z. Rosengart, and Stephen J. Warner, respectfully submit this opposition to the Lead Plaintiff's Motion for Class Certification (the "Motion") (D.I. 214).

## PRELIMINARY STATEMENT

Contrary to Lead Plaintiff's claim in the Motion, this is not a "typical" securities fraud case. Unlike most securities fraud cases, the proposed class covers *the entire period* that the corporate defendant was a public company, including a substantial period when the company was *not* listed on an open market, national exchange. Moreover, unlike most securities fraud cases, Lead Plaintiff apparently seeks to represent investors who bought stock directly from the company in private transactions, even though it is well-settled that such "private" purchasers cannot be part of a litigation class that is seeking certification based on the efficient-market hypothesis set forth in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) and its progeny.

Notwithstanding these unique facts, Lead Plaintiff has provided the Court with no analysis – expert or otherwise – to support a finding that the market for Dyadic's stock was "efficient." Indeed, while Courts regularly certify securities class actions involving securities traded on a national exchange, courts do not simply presume efficiency but instead require a lead plaintiff to prove that the market for the securities at issue was efficient. Lead Plaintiff has not met its burden to do so here – and certainly has not done so for the period between October 29, 2004 and May 25, 2006 (when Dyadic's stock was *not* listed on the American Stock Exchange ("AMEX")). To the contrary, the record evidence suggests that the stock was not efficient: Dyadic's stock was thinly traded and covered by only two analysts (neither of which initiated coverage until Dyadic had been listed on the AMEX for almost four months). In any event, without rigorous analysis to support a Court finding of the efficiency of the market for Dyadic stock, questions of fact common to class members will *not* predominate over individualized issues (and individualized proof at trial) of reliance on Dyadic's public statements.

In short, the proposed class cannot be maintained under FED. R. CIV. P. 23(b)(3).

## FACTS

Before October 29, 2004, Dyadic had been a private Florida company since its founding in 1979. (Affidavit of Adam J. Morgan ("Morgan Aff.") ¶2 (attached hereto as **Exhibit 1**); Compl. ¶¶12, 15.)[1] Dyadic officially became a public company through a reverse merger on October 29, 2004. (Compl. ¶12.) Between November 5, 2004 and May 26, 2005, Dyadic's stock could be purchased on the "OTC Bulletin Board" ("OTC BB") under the symbol "DYAD." (Morgan Aff. ¶4.) The average trading volume of Dyadic's stock on the OTC BB was approximately 183,000 shares per week. (*Id.* ¶5.) This amounts to average weekly trading volume during this period of roughly 0.8% of the outstanding shares of Dyadic (over 22 million shares as of April 2005). (*Id.*) Indeed, according to publicly-available data, Dyadic's stock traded 2000 shares or less on 29 of the 129 days that the stock was listed on the OTC BB (*i.e.*, less than 0.1% percent of outstanding shares). Moreover, on nine of these days, ***no shares*** were traded.

No securities analysts "covered" Dyadic before Sanders Morris Harris ("Sanders") issued a report initiating coverage of Dyadic on September 22, 2005. (*Id.* ¶6 and Ex. A.) In that report, Sanders Morris noted the "limited marketability" of Dyadic's stock prior to January 28, 2005 (when Dyadic's registration with the SEC became effective). (*Id.*, Ex. A at 2.) Sanders further noted that, ***even after the SEC filing***, the stock had struggled due, in part, to its "limited financial history" and its "limited visibility to the investment community." (*Id.*) Sanders went so far as to caution investors about attempting to find benchmarks for the value of Dyadic's stock: "Given its limited history as a public company, Dyadic has no historical valuation benchmarks that investors can use to assess the company's value." (*Id.*, Ex. A at 2.)

---

[1]  "Compl." refers to the Second Amended Consolidated Class Action Complaint, dated December 22, 2008, D.I. 150.

Starting on May 26, 2005, Dyadic's stock was listed and began trading on the AMEX under the symbol "DIL." (*Id.* ¶4; *see also* Compl. ¶12.) Sanders initiated coverage almost four months later, and the only other analyst to cover Dyadic during the proposed class period – Cantor Fitzgerald – initiated coverage over 16 months later, on October 17, 2006. (*Id.* ¶6.) During the time period that Dyadic's stock traded on the AMEX (May 26, 2005 to April 23, 2007), the average trading volume was approximately 400,000 shares per week. (*Id.* ¶7.)

In December 2006, Dyadic consummated a private placement of its common stock and warrants with institutional investors for gross proceeds of approximately $13 million. (*Id.* ¶3.) This type of private investment in the public equity securities of a company is commonly known as a "PIPE" transaction. (*Id.*) Pursuant to the Securities Purchase Agreement entered into between Dyadic and the investors in this PIPE transaction ("PIPE Agreement"), Dyadic was required to register the shares of its common stock purchased by the investors and to keep such registration continuously effective. (*Id.*) Following the suspension of Dyadic's stock from trading on the AMEX and its disclosure in April 2007 that its previously filed registration statements could no longer be relied upon, Dyadic paid certain investors in this PIPE Transaction approximately $1.1 million as liquidated damages in accordance with the terms of the PIPE Agreement. (*Id.*)

To the best of Dyadic's knowledge and based on the fact that all of Lead Plaintiff's purchases of Dyadic's stock occurred in 2006 and 2007, it appears that Lead Plaintiff made all its purchases of Dyadic stock on the AMEX. (*See* Certification of Franck Prissert as Proposed Lead Plaintiff Pursuant to Federal Securities Laws, dated December 6, 2007 (D.I. 10-1).) It does not appear that Lead Plaintiff made any purchases of Dyadic stock on the OTC BB or through any method other than open market transactions on the AMEX.

Lead Plaintiff now moves the Court to certify a class consisting of any person, other than a Defendant in this action (or person connected to a Defendant), who "purchased or acquired" Dyadic stock at any time between October 29, 2004 and April 23, 2007. (Motion at 1.) Defining

3

the class to include the entire time period that Dyadic was a public company sweeps in: (i) persons who purchased Dyadic stock on OTC BB; (ii) persons who purchased Dyadic stock on AMEX; and (iii) persons who acquired Dyadic stock in private placements.  Defendants therefore oppose certification of the proposed class.

## ARGUMENT

The Court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."  *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)); *see also Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (a "trial court has an 'independent obligation' to decide whether an action was properly brought as a class action"); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 272 (N.D. Ala. 2009) ("*HealthSouth* I") (stating that the Eleventh Circuit requires a "rigorous analysis" before certifying a class in a securities fraud action).  Rule 23 requires that Lead Plaintiff show that class issues predominate, *i.e.*, that the issues to be litigated that are subject to generalized proof predominate over those issues that are subject to individualized proof.  FED. R. CIV. P. 23(b)(3); *Rutstein v. Avis Rent-A-Car Sys., Inc.* 211 F.3d 1228, 1233 (11th Cir. 2000).  Here, Lead Plaintiff has not provided the Court with sufficient evidence to undertake the rigorous analysis required to determine whether the market for Dyadic's stock was efficient during the proposed class period.  Without such an analysis, the Court cannot determine whether the issues subject to generalized proof predominate over the issues of reliance on Dyadic's public statements subject to individualized proof.

### I.  INDIVIDUAL QUESTIONS OF RELIANCE PREDOMINATE OVER COMMON QUESTIONS

Individualized showings of reliance will be required because Lead Plaintiff has not met its burden to show class-wide reliance through the fraud-on-the-market reliance presumption. That presumption, which was adopted by the Supreme Court in *Basic, Inc. v. Levinson*, allows securities fraud plaintiffs to show class-wide reliance on a defendant's alleged

4

misrepresentations without first demonstrating that each class member actually relied on those misrepresentations. 485 U.S. at 241-42. To establish the presumption, Lead Plaintiff must prove, *inter alia*, that Dyadic's stock traded on an open and efficient market. *Id.* at 248. Lead Plaintiff has not submitted any analysis – expert, economic, or otherwise – to prove that the market for Dyadic's stock was efficient at all times during the proposed class period. In fact, Lead Plaintiff's Motion does ***not*** even inform the Court that there was a substantial time period – over six months of the proposed 30-month class period – during which Dyadic's stock did not trade on the type of open market, national exchange that often provide courts some comfort about the efficiency of the market for the subject stock. (*See* Motion at 14 ("In this case, Dyadic's shares were listed and actively traded on the American Stock Exchange during the Class Period"); *see also* Compl. ¶114 ("Throughout the Class Period, Dyadic's securities were actively traded on the AMEX").)

As shown below, Lead Plaintiff has submitted no evidence – much less provided a "rigorous analysis" – to support a finding that the market for Dyadic's stock was efficient between October 29, 2004 and April 23, 2007. To the contrary, there is record evidence suggesting that the market for Dyadic's stock was not efficient.

### A. There Is No Evidence In The Record That The Market For Dyadic's Stock Between October 29, 2004 and May 26, 2005 Was Efficient

Lead Plaintiff's Complaint admits that there was an over six month period between the time that Dyadic became a public company (October 29, 2004) and its stock began trading on the AMEX (May 2005). (Compl. ¶12.) Yet, Lead Plaintiff does not provide the Court with any analysis or evidence to support a finding that the market for Dyadic's stock during this time period was efficient. To the contrary, the factors that courts often analyze suggest that the market was not efficient. *See In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 632 (N.D. Ala. 2009) ("*HealthSouth* II") (in evaluating the efficiency in the trading of a security, courts

5

generally consider, among other *Cammer* factors, whether the security has a large weekly trading volume and whether a significant number of securities analysts followed and reported on the company's stock during the applicable period) (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989)).

*First*, Dyadic's stock was traded on an over-the-counter market – not a national exchange – between October 29, 2004 and May 26, 2005.  Courts have rejected the efficiency of stocks traded on such markets, including, for example, one of the leading cases on the appropriate analysis to determine the efficiency of a market for the subject stock.  *Cammer v. Bloom*, 711 F. Supp. 1264, 1280-87 (D.N.J. 1989) (rejecting fraud-on-the-market presumptions in an over-the-counter market); *see also Camden Asset Mgmt., L.P. v. Sunbeam Corp.*, No. 99-8275, 2001 U.S. Dist. LEXIS 11022 at *27-28 (S.D. Fla. July 3, 2001) ("courts only reluctantly apply fraud on the market theory to class actions in less developed financial markets").  Even if the location of the trading is not dispositive, here, Dyadic's stock was thinly traded on the OTC BB.  On average, the stock traded approximately 183,000 shares per week, or 0.8% of Dyadic's roughly 22 million outstanding shares.  Average weekly trading volume of less than 1% also suggests that the market for Dyadic's stock on the OTC BB was not liquid.  *Compare HealthSouth* I, 257 F.R.D. at 281 ("The high level of trading activity of HealthSouth stock indicates that HealthSouth stock traded in a liquid market…. Average reported daily trading volume during the Class Period was more than 2.5 million shares with an average daily dollar volume of more than $30 million.  The large amount of trading in HealthSouth's common stock demonstrates that HealthSouth common stock traded in an efficient market"); *see also In re NetBank, Inc.*, 259 F.R.D. 656, 670 (N.D. Ga. 2009) ("A high average weekly trading volume suggests market efficiency since it implies 'significant investor interest in the company' and 'a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information'") (citing *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514 (1st Cir. 2005) (quoting *Cammer*, 711 F. Supp. at 1286); *see also Krogman v. Sterritt*, 202

6

F.R.D. 467, 474 (N.D. Tex. 2001) ("This indicator appears to be one of the most important in gauging the efficiency of the market for a particular stock"); *Cammer*, 711 F. Supp. at 1286 (citing authority stating that an average weekly trading of two percent or more of outstanding shares "would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption").

*Second*, Dyadic was not covered by a single securities analyst at any point during the stock's trading on the OTC BB. Such non-existent analyst coverage cannot support a finding of efficiency. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 499 (S.D. Fla. 2003) ("The Court finds that the existence of **two (2) analysts does not** heavily favor a finding of efficiency. Courts addressing the issue of market efficiency in the context of class certification have applied the 'fraud on the market' theory where at **least six (6) securities analysts** issued reports on the stock during the class period" (emphasis added)) (*citing In re Amerifirst Litigation*, 139 F.R.D. 423, 431 (S.D. Fla. 1991) (six securities analysts sufficient); *see also Krogman*, 202 F.R.D. at 475 (inefficient market found, in part, where Plaintiffs allege at least **two analysts** and few reports); *Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 303 (S.D. Tex. 2000) (not an efficient market where Plaintiffs provided no evidence regarding analysts). Indeed, when a securities analyst finally started to cover Dyadic (after it had been trading on the AMEX for four months), the analyst identified a number of factors that compel the conclusion that the market for Dyadic's stock was not efficient:

> Prior to January 28, 2005 (the effective date of Dyadic's common stock registration), DIL's common stock had **limited marketability**. The registration statement related to the company's October 2004 $25.2 million private placement of equity at $3.33 per share. The stock closed at $3.70 on the effective date of the registration. **Since the SEC filing, the stock has struggled due, in part, to its limited financial history**, its status as an early stage biotechnology company, and **limited visibility to the investment community**…. Given its **limited history** as a public company, Dyadic has no historical valuation benchmarks that investors can use to assess the company's value.

7

(Morgan Aff., Ex. A at 2 (emphasis added).)  Lead Plaintiff has not provided evidence on any of the other *Cammer* factors to counterbalance the factors cited above that weighs against the efficiency of the market for Dyadic's stock between October 29, 2004 and May 26, 2005.[2]  In sum, the evidence in the record strongly suggests that the market for Dyadic's stock between October 29, 2004 and May 26, 2005 was not efficient, and thus the "fraud-on-the-market" presumption cannot be applied to relieve Lead Plaintiff of individualized proof of reliance for any purchasers of Dyadic stock during this time period.

> **B.    There Is No Evidence In The Record That The Market For Dyadic's Stock While It Traded On The AMEX Was Efficient**

Lead Plaintiff attempts to avoid its burden of proving market efficiency between May 2005 and April 23, 2007 by claiming that "numerous courts have held that stocks trading on AMEX are almost always entitled to the presumption" of efficiency.  (Motion at 14.)  In actuality, the efficiency of the market for particular securities depends on specific characteristics of the trading in those securities – not on the exchange on which that trading occurs.  *See Cammer*, 711 F. Supp. at 1281 ("where a stock trades . . . is not dispositive of whether the 'current price reflects all available information'"); *Bell v. Ascendant Solutions Inc.*, 422 F.3d 307, 313 (5th Cir. 2005) ("the mere fact that a stock trades on a national exchange does not necessarily indicate that the market for that particular security is efficient"); *In re PolyMedica Corp.*, 453 F. Supp. 2d 260, 266 (D. Mass. 2006) ("it is generally accepted that a stock's listing on a national exchange does not, by itself, establish that the stock trades in an efficient market") (citations omitted).  Lead Plaintiff has not proffered a regression analysis, event study, or any other empirical evidence to support a finding of efficiency of the market for Dyadic's stock while it traded on the AMEX.  Again, to the contrary, there is evidence that the market was less

---

[2]  Even if the Court were to certify the Lead Plaintiff's proposed class, the claims of Lead Plaintiff – who only acquired Dyadic stock through purchases on the AMEX – are not "typical" of persons who purchased Dyadic stock on the OTC BB when the stock was thinly traded and not covered by any securities analyst.  FED. R. CIV. P. 23(a)(3).  There is no other Lead Plaintiff whose claims are typical of someone who purchased or acquired Dyadic stock in any manner other than through open market purchases on the AMEX.

8

than efficient. For example, no analyst covered the stock for the first four months it was traded on the AMEX (May 26, 2005 to September 22, 2005), one analyst covered it for the next twelve months (September 22, 2005 to October 17, 2006), and then only two analysts covered it for the last six months of the proposed class period (October 17, 2006 to April 23, 2007). *See supra*, §I(A).

Lead Plaintiff essentially asks the Court to simply assume that the market for Dyadic's stock was efficient. The Court should not do so, particularly where, as here, the stock was thinly-traded and covered by very few analysts. Until the Lead Plaintiff permits the Court to undertake the rigorous analysis to make a finding of the efficiency of the market for Dyadic's stock, the Court cannot certify the Lead Plaintiff's proposed class.

## II. ANY CLASS MUST BE LIMITED TO THOSE PERSONS WHO PURCHASED DYADIC STOCK ON THE AMEX

Even if the Court were to conclude that the market for Dyadic's stock during its trading on the AMEX was efficient, the Court should certify only a class consisting of persons who purchased stock on the AMEX. As shown above, there is no evidence that the market for Dyadic's stock was efficient right after it first went public and was trading on the OTC BB. Any persons who purchased on the OTC BB are simply not entitled to a presumption of reliance on Dyadic's public statements, and should be excluded – lest their individualized issues of reliance predominate. Likewise, any class must exclude investors who bought shares directly from Dyadic in private placements pursuant to specific agreements with Dyadic governing their purchases of Dyadic's securities, such as, for example, the PIPE investors. Indeed, the fact that Dyadic paid certain PIPE investors liquidated damages pursuant to the PIPE Agreement (Morgan Aff. ¶3) further establishes that these private investors are not similarly situated to someone who purchased Dyadic stock on the AMEX. Thus, investors in Dyadic's private placements should not be part of the proposed class. *See In re Sahlen & Assoc. Inc. Sec. Litig.*, 773 F. Supp. 342, 356 n. 14 (S.D. Fla. 1991) (plaintiff who did not buy securities in the open market, but rather, in

9

a private dealing is not entitled to rely on a fraud on the market theory) (citing *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 804 (S.D. Cal. 1990))._

## CONCLUSION

The Court should deny Lead Plaintiff's Motion in its entirety. Lead Plaintiff has not met its burden to establish the efficiency of the market for Dyadic stock during the proposed class period. Even if the Court were to find that the lone fact proffered by Plaintiff satisfies Lead Plaintiff's burden (*i.e.*, that Dyadic's stock traded on the AMEX for a portion of the proposed class period), the Court should certify a class consisting of only those persons who purchased Dyadic stock on the AMEX.

Dated: March 18, 2010                    Respectfully submitted,

/s/ Andrew Lazerow

John S. Trimper, Esq., Florida Bar No. 326798
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Phone: 561-650-0455
Fax: 561-650-0490

Peter V.B. Unger (*pro hac vice*)
Andrew D. Lazerow (*pro hac vice*)
HOWREY, LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
Phone: (202) 783-0800
Fax: (202) 383-6610

*Attorneys for Defendants Dyadic International, Inc., Mark Emalfarb, Rufus Gardner, and Steven Warner*

/s/ Tracy A. Nichols

Tracy A. Nichols, Florida Bar No. 454567
HOLLAND & KNIGHT LLP
Stephen P. Warren, Fla. Bar No. 788171
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

*Attorneys for Defendants Richard Berman, Wayne Moor, and Harry Rosengart*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 18, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

      By:    */s/ John S. Trimper*
                John S. Trimper