UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MICHAEL MILLER, individually and on behalf )
of all others similarly situated, )
)
                Plaintiff, ) Case No. 07-80948-CIV-DIMITROULEAS
)
                v. )
)
DYADIC INTERNATIONAL, INC., RICHARD )
J. BERMAN, MARK A. EMALFARB, RUFUS )
GARDNER, WAYNE MOOR, HARRY Z. )
ROSENGART, and STEPHEN J. WARNER, )
)
                Defendants. )
)

**LEAD PLAINTIFF'S REPLY IN FURTHER
SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION**

      As much as Defendants might wish it were not, this is a typical securities fraud class action as far as class certification is concerned. As noted in Lead Plaintiff's initial brief, class action treatment is particularly appropriate for securities fraud claims, and under such circumstances, courts should err in favor of certifying a class. *See, e.g.*, *In re Amerifest Secs. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("[T]he interests of justice require that in any doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.").

      Defendants concede nearly all of the requirements for class certification here. But they are correct that the Class definition proposed in Lead Plaintiff's Motion was too broad because it did not exclude persons who purchased Dyadic stock in private placements, rather than on an open market. As explained below, however, the Class should continue to include those persons who purchased Dyadic stock on the American Stock Exchange (AMEX) and the over-the-

counter (OTC) bulletin board from October 29, 2004 (when Dyadic went public), through April 23, 2007 (when trading on the AMEX was halted).

In an abundance of caution, however, if the Court has remaining concerns regarding the applicability of the fraud-on-the-market theory in this case, Lead Plaintiff is more than willing to tender an expert report and produce an expert for cross-examination. In that event, Lead Plaintiff requests that the Court enter the schedule in Lead Plaintiff's Motion for Hearing filed with this Reply, which also seeks to give the parties sufficient time to conclude settlement negotiations that have reached an advanced stage. Additionally, the schedule allows the parties sufficient time to seek preliminary approval from the Court, which would make a decision on class certification unnecessary.

## I.     It is undisputed that Rule 23(a)'s requirements are met.

Defendants do not dispute that Lead Plaintiff satisfies Rule 23(a)'s requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. With respect to numerosity, Defendants do not dispute that the Class is so numerous that joinder of all class members would be impractical. *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). As noted in Lead Plaintiff's initial brief, "a reasonable estimate of the size of the Class is at least in the hundreds, probably the thousands, of members." (DE 214 at 5.) Thus, it is undisputed that the numerosity requirement of Rule 23 is satisfied.

With respect to commonality, Defendants do not dispute that Lead Plaintiff's claims present questions of law and fact that are common to the Class. As noted in its initial brief, Lead Plaintiff "seeks to prove that Defendants omitted or made misleading material statements, and that course of conduct will be common to all members of the Class. Defendants' alleged false statements and omissions were uniformly made to all Class members as set forth in the Second Amended Complaint . . . ." (DE 214 at 7.) The Eleventh Circuit has agreed that where

allegations of wrongdoing arise from a common practice or course of conduct, the class members' claims will involve common questions of law and fact. *See, e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 718 (11th Cir. 1987). Accordingly, it is undisputed that the commonality requirement of Rule 23 is satisfied.

With respect to typicality, Defendants do not dispute that Lead Plaintiff's claims are typical of those presented by the Class. Lead Plaintiff is part of the Class and possesses the same interest and suffered the same injury as the Class members. *See, e.g.*, *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997). The Court has already concluded that Lead Plaintiff satisfied the typicality requirement during the lead plaintiff contest in holding that its claims "share the same 'essential characteristics as the class at large.'" (DE 73 at 11.) Thus, it is undisputed that the typicality requirement of Rule 23 is satisfied.

Finally, with respect to adequacy, Defendants do not dispute that Lead Plaintiff and Lead Counsel will fairly and adequately represent the interests of the Class. The Court has already concluded that "Capital Max has proven that it is willing to participate in discovery and has hired competent and adequate class counsel." (DE 73 at 11.) Moreover, Lead Plaintiff has no interests that conflict with members of the Class, and this Court has already recognized that Lead Plaintiff's interests are not antagonistic with other Class members and that it has a sufficient interest in the outcome of this case to ensure vigorous advocacy. (DE 73 at 11.) Accordingly, it is undisputed that the adequacy requirement of Rule 23 is satisfied.

It is thus undisputed that Lead Plaintiff satisfies all of the requirements of Rule 23(a) for class certification.

**II.    The altered Class definition easily satisfies Rule 23(b)(3).**

The only bases upon which Defendants oppose class certification is with respect to Rule 23(b)(3) and its requirement that common questions of law and fact predominate over individual

questions. (DE 217 at 2.) Here, Defendants argue that (1) there is insufficient evidence that the market for Dyadic's stock was efficient while it traded on the AMEX; (2) there is insufficient evidence that the market for Dyadic's stock was efficient while it traded on the OTC bulletin board prior to being listed on the AMEX; and (3) that if the Court does certify a Class, it should not include persons who purchased Dyadic stock in private placements. As explained below, the first two arguments are incorrect, but the third is well-taken. The Court should therefore certify the Class as proposed, now modified to exclude persons who purchased Dyadic stock in a private placement.

### A. The fraud-on-the-market theory applies to Dyadic stock purchased on the AMEX.

Defendants half-heartedly argue that the fraud-on-the-market theory does not apply here because there is insufficient evidence that the market for Dyadic stock was efficient while it was traded on the AMEX. (DE 217 at 8.) But under Defendants' theory, securities fraud plaintiffs would be required to offer extensive expert analysis as to market efficiency before a class could ever be certified, even when a stock is traded on a national exchange. That is simply incorrect.

Federal courts are unanimous in their agreement that a listing on a national stock exchange is a good indicator of efficiency. *See In re Initial Public Offering Secs. Litig.*, 544 F. Supp. 2d 277, 297 n.133 (S.D.N.Y. 2008). And numerous courts have specifically held that stocks trading on the AMEX are entitled to a presumption of efficiency. *See, e.g.*, *Peil v. Speiser*, 806 F.2d 1154, 1158 (3d Cir. 1986); *Cammer v. Bloom*, 711 F. Supp. 1264, 1292 (D.N.J. 1989); Bromberg & Lowenfels, 4 *Securities Fraud & Commodities Fraud* § 7:484 (2d ed.) (stating that "at a minimum, there should be a presumption—probably conditional for class determination—that certain markets are developed and efficient for virtually all the securities

traded there: the New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System").

In *RMED Int'l v. Sloan's Supermarkets*, 185 F. Supp. 2d 389, 404–05 (S.D.N.Y. 2002), the defendants argued that the market for the company's stock, which was traded on the AMEX, was not an open and efficient market and that the plaintiffs could not avail themselves of the benefit of the fraud-on-the-market theory. Similar to the instant case, the defendants offered no cases where a court determined that a stock traded on the AMEX was not considered to have been traded on an open and efficient market. *Id.* at 404. In fact, the court found that "research has failed to reveal *any case* where a stock traded on the AMEX was not found to have been traded in an open and efficient market." *Id.* (emphasis added).

Similarly, in *Miller v. NTN Communications*, No. 97-1116, 1999 WL 817217, at *11 (S.D. Cal. May 21, 1999), the court adopted the presumption that the AMEX was an efficient market for the company's stock. Specifically, the court found that "[r]egardless of the number of stock analysts who followed [the company's] shares during the class period, defendants have failed to present sufficient evidence to show that [the company's] shares were 'inactively traded or unresponsive to new information' during the relevant class period." *Id.* Moreover, the court found that the plaintiffs had carried their burden of showing an efficient market by the severity and timing of the decline in the company's shares immediately after the "going concern" warning was issued, which supported the plaintiffs' contention that the AMEX was an efficient market during the relevant time period. *Id.*

As noted in Lead Plaintiff's initial brief, Dyadic publicly disclosed on April 24, 2007, that it had discovered material operational and financial improprieties at its Hong Kong and mainland China operations and that its previous SEC filings should no longer be relied upon.

5

(DE 214, Ex. 1.) The AMEX halted trading of Dyadic stock and eventually delisted it, landing Dyadic on the Pink Sheets where it did not resume trading for another eight months. (DE 150 at ¶¶ 5–6.) When trading finally reopened on the Pink Sheets in January of 2008, Dyadic's share price had dropped from $5.30 the day its shares last traded to a mere $0.50 per share. (*Id.* at ¶ 6.) These facts demonstrate market efficiency, similar to the *Miller* case, by showing the severity and timing of the decline in the company's shares after Dyadic disclosed the improprieties. *See Miller*, 1999 WL 817217, at *11. As noted in *Miller*, "an efficient market is one that obtains material information about a company and rapidly reflects that new information in the price of the stock." *Miller*, 1999 WL 817217, at *10. Moreover, Defendants have offered nothing to suggest that the AMEX was not an efficient market during the relevant time period.

Although Defendants complain that Lead Plaintiff has not proffered an expert regression analysis or event study, expert testimony is not required on the issue of market efficiency. *See, e.g.*, *In re Miva Inc. Secs. Litig.*, No. 05-201, 2008 WL 681755, at *8–9 (M.D. Fla. 2008) (efficient market was adequately established, with no expert opinion, where stock was "traded on the NASDAQ" and defendant failed to rebut presumption that market was efficient); *LaGrasta v. First Union Secs. Inc.*, No. 01-251, 2005 WL 1875469, at *11–12 (M.D. Fla. 2005) (same). At this stage of the proceedings, the Court need only inquire into whether the stock traded in an efficient market and should not examine the merits of the case. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 496 (S.D. Fla. 2003) (courts should not delve into merits at class certification stage).

Although the market for Dyadic stock on the AMEX was clearly efficient, if the Court has any concerns over this element, Lead Plaintiff can allay those concerns in an expert report and present its expert at an evidentiary hearing on the subject. *See Mills v. Foremost Ins. Co.*,

6

511 F.3d 1300, 1309 (11th Cir. 2008) (holding that the district court will often be required to "permit some discovery and/or an evidentiary hearing to determine whether a class may be certified"). Lead Plaintiff's accompanying Motion for Hearing presents a schedule for the disclosure of expert materials and an evidentiary hearing.

      **B.**    **The fraud-on-the-market theory applies to Dyadic stock purchased over the counter prior to May 26, 2005.**

Defendants argue in the alternative that, even if the market for Dyadic stock was efficient on the AMEX, it was not efficient in the period leading up to May 26, 2005, when Dyadic stock could be purchased only on the OTC bulletin board. But over-the-counter markets are also generally efficient. *See* Bromberg & Lowenfels, 4 *Securities Fraud and Commodities Fraud* § 7:484 (2d ed.) (stating that "[s]ufficiently active over the counter markets are generally recognized as efficient for [fraud-on-the-market] purposes"). Defendants cite statistics regarding Dyadic's trading volume and the number of analysts covering the stock while it traded over-the-counter, but simply make conclusory allegations regarding what those statistics mean. (DE 217 at 6–7.) Instead of providing an expert report refuting Lead Plaintiff's position, Defendants rest their argument on a series of inapposite cases, most of which actually *granted* class certification. *See In re HealthSouth Corp. Secs. Litig.*, 257 F.R.D. 260, 281 (N.D. Ala. 2009) (granting class certification where stock traded on NYSE); *In re NetBank Inc.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) (granting class certification where stock traded on NASDAQ); *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001) (denying class certification where stock traded only on OTCBB and never on national exchange); *Cammer v. Bloom*, 711 F. Supp. at 1286 (upholding application of fraud-on-the-market presumption where stock traded over-the-counter).

At most, Defendants have merely raised a doubt as to whether the OTC market for Dyadic stock was efficient, and any doubt should be resolved in favor of certifying the Class.

7

*See In re Amerifest Secs. Litig.*, 139 F.R.D. at 427. But, as with Defendants' AMEX argument, if the Court has concerns over including OTC purchasers in the Class, those concerns would best be addressed through a combination of expert testimony and an evidentiary hearing, as laid out in Lead Plaintiff's accompanying Motion for Hearing.

### C.  Lead Plaintiff agrees that the Class should not include persons who purchased Dyadic stock in private placements.

Finally, Defendants argue that, if the Court certifies any class, it should not include persons who purchased Dyadic stock in private placements, rather than on an open market. (DE 217 at 9–10.) Defendants' position is well-taken: the original proposed Class definition was vague, and it was never meant to include these purchasers. Therefore, Lead Plaintiff suggests that the proposed Class definition be modified to read as follows (with the modification underlined):

> All persons who purchased or acquired Dyadic International, Inc. securities <u>on the American Stock Exchange (AMEX) or the over-the-counter bulletin board</u> from October 29, 2004, through April 23, 2007 (the "Class Period"). Excluded from the Class are the Defendants herein, the directors, officers, and employees of Dyadic, the members of each individual Defendant's family, any entity in which any Defendants have a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors- and predecessors-in-interest, or assigns of any such excluded party.

### III. Conclusion

Defendants do not dispute that the proposed Class satisfies all of the requirements of Rule 23(a), and the majority of the issues raised by Defendants with respect to Rule 23(b) are moot in light of Lead Plaintiff's agreement to exclude private purchasers. The modified proposed Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3). Accordingly, Lead Plaintiff respectfully requests that the Court certify the Class and designate Lead Plaintiff the Class representative and Lead Counsel and Liaison Counsel as Class counsel.

In the alternative, should the Court have any concerns regarding any portion of the disputed Rule 23(b) factors, Lead Plaintiff requests the Court set a schedule for disclosure of expert witness reports and an evidentiary hearing, as outlined in the accompanying Motion for Hearing. Given the advanced stage of settlement negotiations, Lead Plaintiff would also suggest a hearing date at least twenty-eight (28) days from today, or on May 10, 2010, as indicated in the Motion for Hearing, which gives the parties sufficient time to reach an agreement and seek preliminary approval from the Court.

Respectfully submitted,

By: /s/ Adam M. Moskowitz
Adam M. Moskowitz, Esq. FL. Bar No. 984280
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
*Liaison Counsel*

Matthew T. Heffner, Esq.
Glenn L. Hara, Esq.
SUSMAN HEFFNER & HURST, LLP
Two First National Plaza, Suite 600
Chicago, Illinois 60603
Tel: (312) 346-3466
Fax: (312) 346-2829
*Lead Counsel*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been filed with the Clerk of the Court using CM/ECF and served via transmission of Notices of Electronic generated by CM/ECF this 29th day of March, 2010.

By: /s/ Adam M. Moskowitz
Adam M. Moskowitz

311346v.1