```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA

           CASE NO. 07-80948-CIV-DIMITROULEAS/SNOW
```

MICHAEL MILLER, individually
and on behalf of all others
similarly situated,

      Plaintiffs,

vs.

DYADIC INTERNATIONAL, INC.,
et al.,

      Defendants.
_____/

**ORDER**

THIS CAUSE is before the Court on the defendant Dyadic International, Inc.'s Motion to Quash Non-Party Subpoena and Objection (DE 203), which was referred to United States Magistrate Judge Lurana S. Snow. The motion is fully briefed and ripe for consideration by the Court.

## I. PROCEDURAL HISTORY

This is a class action lawsuit alleging violations of Sections 10b and 20(a) of the Securities and Exchange Act, 15 U.S.C. Sections 78j(b) and 78t(a) against defendant Dyadic International, Inc. (hereinafter "Dyadic"). The Second Amended Complaint was filed on December 22, 2008. On January 21, 2009, Dyadic filed an Answer to the Second Amended Complaint (DE 166). On that same date, defendant Gardner filed a Motion to Dismiss the Second Amended Complaint; defendants Moor, Rosengart and Berman filed their Motion to Dismiss on January 28, 2009. Pursuant to the

Private Securities Litigation Reform Act (PLSRA), discovery was stayed for all parties pending the Court's ruling on the motions to dismiss.

Meanwhile, on December 22, 2008, concurrent with the filing of the Second Amended Complaint, the named plaintiff (hereinafter "the plaintiff") issued a subpoena to Norman Allen Moscowitz of Moscowitz & Moscowitz, P.A., seeking the following items:

> 1. All documents pertaining to the Audit Committee's hiring of Moscowitz & Moscowitz, P.A., including any retainer agreements or other documents outlining the scope of Moscowitz & Moscowitz' investigation.
>
> 2. All documents pertaining to the Moscowitz Report, including but not limited to all documents generated and/or relied on during your investigation of Dyadic, whether or not such documents were actually used or mentioned in the Moscowitz Report.
>
> 3. All documents pertaining to the "2003-2004 whistleblower e-mails" referred to in the Moscowitz Report.
>
> 4. All documents pertaining to the "2007 whistleblower e-mails" referred to in the Moscowitz Report.

(Motion to Quash, DE 203, Exhibit A)

The subpoena was returnable at the office of the plaintiff's counsel on January 16, 2009. <u>Id</u>. The Moscowitz Firm was served on December 24, 2008, and did not object to the subpoena, but defendants Moor, Rosengart and Berman moved to quash the subpoena and to stay discovery (DE 160) on January 28, 2009,

the date on which they filed their Motion to Dismiss the Second Amended Complaint.  To date, no documents have been produced pursuant to the subpoena.

On September 28, 2009, United States District Judge William P. Dimitrouleas issued an Order to the Motions to Dismiss the Second Amended Complaint, dismissing Count I of the Second Amended Complaint against defendants Warner, Rosengart and Berman. Judge Dimitrouleas denied defendants Moor, Rosengart and Berman's Motion to Quash Non-Party Subpoenas and for Stay of Discovery (DE 160) as moot.  (Order on Defendants' Motions to Dismiss and Motion to Quash, DE 198 at 25) On October 29, 2009, one month after the Order was entered on the docket, Dyadic filed the instant Motion to Quash Non-Party Subpoena and Objection.

## II. ARGUMENTS PRESENTED BY THE PARTIES

Dyadic's Motion to Quash recites that on May 15, 2007, it hired the Moscowitz Firm to conduct an investigation of alleged improprieties at Dyadic's Asian subsidiary and to advise Dyadic whether any of its officers or employees participated in any improprieties at the Asian subsidiary.  The motion states that the "investigation by the Moscowitz Firm was initiated in order that Dyadic might assess its potential legal liability" and "in anticipation of litigation against Dyadic." (DE 203 at 2-3). Dyadic asserts that because of this, all communications and documents in the possession of the Moscowitz Firm relating to its

3

engagement are protected by the attorney-client and work product privileges. In support of this assertion, Dyadic states:

> The Moscowitz Firm conducted a confidential investigation and reported to Dyadic regarding factual matters pertinent to Dyadic's potential legal exposure for alleged improprieties in its Asian operations. Moreover, the Moscowitz Firm advised Dyadic in terms of its impressions, conclusions and opinions concerning Dyadic's potential legal liability arising out of its Asian operation. The subject matter of the Moscowitz Firm's engagement relates to the very allegations asserted by the Lead Plaintiffs in their Second Amended Complaint. (DE 203 at 4)

The motion was not accompanied by a privilege log or any further description of the materials in the possession of the Moscowitz Firm, and did not contain the certificate that counsel for Dyadic had conferred with opposing counsel, as required by S.D.Fla.L.R. 7.1.A.3.

The plaintiff, in his response to the motion, advances several opposing arguments: (1) the defendant waived any alleged privileges with respect to the Moscowitz Report and communications with the Moscowitz Firm by continually revealing these documents to the public and litigation adversaries; (2) the defendant has waived any alleged privilege to the documents at issue because it has put those documents at issue by suing the Moscowitz Firm for malpractice, and (3) the motion is untimely and not accompanied by a privilege log. In connection with the third argument, the plaintiff points out that Dyadic also failed to comply with the

4

Local Rules of this District by filing its motions without first conferring with opposing counsel.

With respect to his first contention, that Dyadic waived any privileges by disclosure of the documents in question, the plaintiff points out that this issue is governed by FRE 502(a), which states:

> **(a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.**--When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** they ought in fairness to be considered together.

The plaintiff notes that Dyadic published the Moscowitz Report in a public filing with the Securities and Exchange Commission (SEC) in March 2008; turned over e-mail correspondence between Dyadic personnel and the Moscowitz Firm to the SEC, its opponent in an adversarial proceeding, and turned over the Moscowitz Report to the plaintiff in the instant proceeding. (Response to Dyadic's Motion to Quash Non-Party Subpoena, DE 204, Exhibits C, F, I-L)  The plaintiff contends that these actions

resulted in a waiver of the attorney-client and work product privileges with respect to all documents pertaining to the preparation of the Moscowitz Report and all correspondence between Dyadic and the Moscowitz Firm, since all the requirements of FRE 502(a) have been satisfied.

In support of this contention, the plaintiff relies on In re Royal Ahold N.V. Securities & ERISA Litig., 230 F.R.D. 433, 436-37 (D. Md. 2005) (disclosure of conclusions reached in a report to the SEC waived work product privilege as to interview memoranda and investigative reports underlying the report, particularly since report was disclosed to improve the corporation's position with investors, financial institutions and regulatory agencies); S.E.C. v. Microtune, Inc., 258 F.R.D. 310, 317 (N.D. Tex. 2009) (disclosure to the SEC of the results of an investigation, including attorney-client privileged documents, waived the privilege as to all documents pertaining to the investigation); In re OM Securities Litig., 226 F.R.D. 579, 592 (N.D. Ohio 2005) (pursuant to fairness doctrine, attorney-client privilege had been waived with respect to all documents underlying an audit committee's presentation), and In re Kidder Peabody Securities Litig., 168 F.R.D. 459, 465 (work product doctrine did not apply to factual summaries prepared during investigation conducted by outside counsel, since investigation would have been conducted regardless of the threat of litigation).

The plaintiff also argues that Dyadic has waived its attorney-client and work product privileges by suing the Moscowitz Firm for malpractice in Florida state court. (DE 204, Ex.G) The plaintiff points out that one of the allegations in the amended complaint filed against the Moskowitzes is that they were guilty of professional negligence and breached their fiduciary duties by "preparing a written report of investigation and disseminating it publicly" and by "failing to protect the investigation as an attorney/client privileged document." Id. at 60, 63. The plaintiff notes that under Florida law, "where a client sues her attorney for malpractice and voluntarily discloses her communications with the attorney, the client waives the attorney-client privilege as to those subjects disclosed," quoting S&I Invests. v. Payless Flea Market, Inc., 10 So. 3rd 699, 702 (Fla. 4th DCA 2009). The plaintiff argues that Dyadic has waived the work product and attorney-client privilege as to communications with the Moscowitz Firm because it necessarily must reveal those matters in order to prove its malpractice claim.

The plaintiff's final argument is that Dyadic has waived its right to assert the attorney-client and work product privileges because the instant motion was not timely filed and was not accompanied by a privilege log. The plaintiff asserts that Fed. R. Civ. P. 45(c)(3)(A) requires that a motion to quash or modify a subpoena must be "timely," and that most courts have construed this

to require that the motion must be filed with the time set in the subpoena for compliance. United States ex. rel. Pogue v. Diabetes Treatment Centers Of Am., Inc., 238 F. Supp. 2d 270, 278 (D.D.C. 2002)(motion filed 10 months after return date of subpoena was untimely); Sterling Merchandising, Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 85 (D.P.R. 2006)(motion filed two months after return date untimely); City of St. Petersburg v. Total Containment, Inc., 2008 WL 1995298 at *2 (E.D.Pa. May 5, 2008)(motion filed one day after return date untimely). The plaintiff argues that Dyadic should have filed its motion prior to the subpoena return date of January 14, 2009, as was done by the co-defendants.

The plaintiff also notes that Fed. R. Civ. P. 45(d)(2)(A)(ii) mandates that a party asserting a privilege to prevent the production of subpoenaed material must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." The plaintiff points out that the party asserting the attorney client privilege bears the burden demonstrating how each document satisfies all the elements of the privilege, and a "'clear showing must be made which sets forth the items or categories objected to and the reason for that objection.'" Microtune, 258 F.R.D. at 315, quoting Navigant Consulting, Inc. v. Wilkinson, 220 F.R.D. 467, 473 (N.D. Tex. 2004). The plaintiff argues that in the

instant motion, Dyadic has fallen far short of meeting its burden by making only a blanket assertion that the attorney-client and work product privileges apply to "all communications and documents in the possession of the Moscowitz Firm relating to its engagement for Dyadic." (Motion to Quash, DE 203 at 3)

The plaintiff reiterates its argument that the Moscowitz Firm was hired for business purposes, not in anticipation of litigation, rendering the work product privilege inapplicable. In re Ahold, 230 F.R.D. at 435-36; In re Kidder, 168 F.R.D. at 463-67. The plaintiff contends that Dyadic should not be permitted to cure its omission of a privilege log (or any description of the material it alleges to be privileged) because Dyadic has had more than a year to do so.

In its reply memorandum (DE 209), Dyadic sets forth what it believes to be the facts pertinent to the resolution of the instant motion. First, it states:

> It is undisputed that the Moscowitz Firm was engaged as special counsel for the purpose of investigation allegations of impropriety and reporting to Dyadic's senior management. The purpose was to assist Dyadic in investigating its own potential wrongdoing and for purposes of corporate housecleaning to protect the corporation's shareholders and investors.

Id. at 2. Next, Dyadic notes that Moscowitz Report was based on a review of thousands of documents, primarily emails, most of which were culled from computers at Dyadic and Dyadic's Asian subsidiary. Id.

Dyadic then asserts that it "has never had access to review all of the documents and files gathered by Kroll International that were furnished to the Moscowitz Firm for its investigation." Id. Dyadic does not offer any explanation for the astonishing assertion that it has not had access to its own documents, culled from its own computers and furnished (at Dyadic's direction) to its own lawyers. Indeed, Dyadic does not state that it has ever made any effort to obtain these materials from anyone.

Next, Dyadic points out that the Moscowitz Report contains only a fraction of the documents culled from Dyadic and its Asian subsidiary, nor does it include all of Dyadic's communications with the Moscowitz Firm or all of the Moscowitz Firm's work papers, memoranda and correspondence. Id. at 2-3. Dyadic recites that in 2008 and 2009, Dyadic voluntarily produced the Moscowitz Report and exhibits to the SEC's enforcement division. Then, in 2009, Dyadic gave these same documents to the plaintiff in the instant case. Id. at 3.

Dyadic contends that the plaintiff has failed to show that Dyadic has information pertaining to the Moscowitz Investigation that it has not turned over to the plaintiff. Dyadic reiterates that it does not know what documents are in the possession of the Moscowitz Firm, and suggests that fairness requires that Dyadic now be afforded an opportunity to conduct a privilege review and prepare a privilege log. Dyadic does not

10

believe the plaintiff will suffer any prejudice as a result, since discovery will not be cut off until June 18, 2010.

Dyadic asks this court to order Dyadic's former lawyers to make available the copies of Dyadic's documents in their possession to Dyadic. Dyadic does not explain why an order of this court directed to Dyadic's former counsel is necessary or appropriate under the circumstances, nor does Dyadic state whether the Moscowitz Firm has ever refused a request by Dyadic that the documents be produced.

Dyadic then turns to the legal arguments advanced by the plaintiff. Regarding whether the voluntary disclosure of the Moscowitz Report to the SEC and to the plaintiff in the instant case constitutes of waiver of the attorney-client and work product privileges as to all documents in the possession of the Moscowitz Firm, Dyadic asserts that the "law regarding privilege waiver was substantially modified by Congress' adoption in 2008 of Federal Rule of Evidence 502." Id. at 4. Without elaboration on how the rule modified the law, Dyadic then cites a series of cases decided more than twenty years prior to the rule's 2008 enactment, to support its argument that there has been only a limited waiver in the instant case. Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1977)(*en banc*)(voluntary surrender of privileged documents to the SEC in non-public proceedings was a limited waiver of the attorney client privilege); Prichard-Keang

11

Nam Corp. v. Jaworski, 751 F.2d 277, 284 (8th Cir. 1984), *cert. dismissed*, 472 u.S. 1022 (1985)(citing Diversified with approval); Byrnes v. IDS Realty Trust, 85 F.R.D. 679 (S.D.N.Y. 1980)(disclosure of a report in response to an SEC subpoena in a private proceeding constituted a limited waiver of the attorney client privilege); Biben v. Card, 119 F.R.D. 421, 428 (W.D. Mo. 1987)(disclosure of information in a non-public SEC proceeding constitutes a limited waiver of the attorney client privilege if the information was communicated to outside counsel for the purpose of corporate housecleaning).

Turning to the plaintiff's argument that Dyadic's malpractice suit against the Moscowitz Firm also has resulted in a waiver of all documents in the firm's possession pertaining to the Moscowitz Report, Dyadic cites two Florida cases which held that a malpractice action against any attorney constitutes only a limited waiver of the attorney client privilege, confined to matters which the lawyer must reveal in order to defend himself. Adelman v. Adelman, 561 So. 2d 671 (Fla. 3rd DCA 1990); Ferrari v. Vining, 744 So.2d 480 (Fla. 3rd DCA 1999).  Dyadic does not discuss how this limited waiver will operate where Dyadic alleges that the Moscowitz Firm committed malpractice by preparing a written, rather than an oral report and presenting it publicly.[1]

---

[1] The amended complaint in Dyadic International, Inc. v. Ernst & Young LLP, et al., Case No. 502009CA010680XXXXMB, filed April 14, 2009, states:

Regarding the plaintiff's final argument, that the instant motion is untimely, Dyadic points out that, pursuant to the PLSRA, its co-defendants' motions to dismiss amended complaint operated to stay all discovery in the case until the motions were resolved.  In re: CFS-Related Securities Fraud Litigation, 179 F.Supp. 2d 1260 (N.D.Ok. 2001). Therefore, discovery and the operation of the subpoena Dyadic now seeks to quash, were stayed until Judge Dimitrouleas entered his order on September 28, 2009. Dyadic argues that in light of the stay, its motion (filed 31 days later) was timely.

Alternatively, Dyadic argues that under Florida law, failure to file a timely motion to quash a subpoena "in order to limit discovery of documents and materials otherwise within the scope of discovery . . . . does not bar a party from asserting a

---

> To best protect Dyadic, the special investigation should never have been in writing, but rather should have been presented to the Board orally.  Once the investigation was reduced to writing, Greenberg, Schwimmer, Bilzen and Moskowitz should have ensured that it, and the information in it, was protected by the attorney client privilege.  Instead, they did the opposite making the report public and providing it to the SEC thereby hoisting Dyadic on its own petard and making the report readily available as a virtual "How-to-Guide" for class action lawyers to sue Dyadic.

(DE 204, Ex.G at 34) These allegations are reiterated in Counts VIII (Professional Negligence) and IX (Breach of Fiduciary Duty) against the Moscowitz Firm.  Id. at 60, 66.

privilege or exemption for matters outside the scope of permissible discovery." <u>Insurance Company of North America v. Noya</u>, 398 So. 2d 836, 838 (Fla. 5th DCA 1981).  *See also* <u>Liberty Mutual Ins. Co. v. Lease America, Inc.</u>, 735 So.2d 560 (Fla. 4th DCA 1999).  Dyadic believes these cases permit it to assert the privilege regardless of the timeliness of the motion to quash and the absence of a privilege log.

> In conclusion, Dyadic states:
>
> > Dyadic has not had an opportunity to review the "thousands" of documents that the Moscowitz Firm reviewed as well as the Moscowitz Firm's work papers, memoranda and other correspondence.  As such, Dyadic is in no better position then [sic] the Lead Plaintiff to specifically identify the documents in the Moscowitz Firm's possession that are potentially privileged.  The Court should allow Dyadic to undertake a privilege review before the Moscowitz Firm releases its files pursuant to the discovery subpoena. Dyadic may then prepare its privilege log.

(DE 209 at 8)

In essence, Dyadic is stating to this Court that it cannot comply with its burden under F.R.Civ.P. 45(d)(2)(A)(2) to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim," because it does not even know what the items in question are, let alone the reasons they are subject to any recognized privilege.  Dyadic does not explain why its ignorance of

14

the documents was not mentioned in the Motion to Quash, nor why Dyadic did not obtain the materials from the Moscowitz Firm (or ask the court for assistance in doing so, if necessary) at any time between December 22, 2008, when the subpoena was issued, until the present date.[2]

### III. ANALYSIS

At the outset, the undersigned notes that Dyadic has failed to confer with opposing counsel prior to filing the instant motion, as required by as required by S.D.Fla.L.R. 7.1.A.3. As a matter of policy and practice, the undersigned denies all motions filed in violation of this rule. Usually such motions are denied without prejudice to re-file after complying with the rule. However, in the interest of judicial economy, the undersigned will consider the other arguments advanced by the parties in deciding whether the motion should be denied with or without prejudice.

The defendant makes a blanket assertion that all materials in the possession of the Moscowitz Firm pertaining to Dyadic's engagement of the firm, the subsequent investigation

---

[2] Although discovery was stayed during the pendency of the co-defendants' motions to dismiss, Dyadic answered the complaint and could have arranged to obtain the materials which it claims it has never seen from the Moscowitz Firm. This could have been done when the subpoena was issued in December 2008, at the time the stay was lifted on September 28, 2009 (and before the filing of the instant motion more than one month later), or while the instant motion was pending (and settlement negotiations were ongoing). Apparently Dyadic felt it was excused from doing so by its request for a court order directing the Moscowitz Firm to give Dyadic its own materials.

15

conducted by the firm and the resulting report (except those materials already turned over to the plaintiff) are protected by the attorney-client and work product privileges.

Where, as here, the basis of federal subject matter jurisdiction is the existence of a federal question, federal common law governs the resolution of privilege issues. <u>Microtune</u>, 258 F.R.D. at 315. The work product doctrine, as set forth in Fed. R. Civ. P. 26(b)(3), offers qualified immunity from discovery for documents prepared in anticipation of litigation or for trial. The party resisting production of such materials "bears the burden of establishing that the documents in question were 'prepared principally or exclusively to assist in anticipated or ongoing litigation.'" <u>In re: Kidder</u>, 168 F.R.D. at 462, quoting <u>United States v. Construction Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2nd Cir. 1996).

In its reply memorandum, Dyadic specifically states that the Moscowitz Firm was engaged for the purpose of assisting Dyadic in investigating its own potential wrongdoing and for purposes of corporate housecleaning to protect the corporation's shareholders and investors.[3] Thus, while Dyadic may have anticipated that there

---

[3] This differs from the assertion made in the motion itself, where Dyadic states that the Moscowitz Firm conducted a confidential investigation and reported to Dyadic regarding factual matters pertinent to Dyadic's potential legal exposure for alleged improprieties in its Asian operations, and advised Dyadic in terms of its impressions, conclusions and opinions concerning Dyadic's potential legal liability arising out of its

would be litigation at some point, the materials assembled and generated by the Moscowitz Firm, on which the firm relied in preparing its report, were collected primarily for other purposes. Therefore, the work product privilege does not apply to the items listed in the subpoena directed to the Moscowitz Firm.  In re: Kidder, 168 F.R.D. at 463-67; In re: OM Group Securities Litigation, 226 F.R.D. at 585-87; In re: Royal Ahold, 230 F.R.D. at 435-36.

Turning to the attorney client privilege, a general allegation of privilege is insufficient to meet the proponent's burden of demonstrating how each document satisfies all elements of the privilege.  Instead,

> The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. [*Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004)] Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege must still provide a "detailed description of the materials in dispute and the precise reasons for thei claim of protection from disclosure." *Id.* at 473-4, *quoting Pippinger v. Gruppe*, 883 F. Supp. 1201, 1212 (S.D. Ind. 1994).

---

Asian operation.  The undersigned notes that the statement of purpose Dyadic advances in the reply memorandum mirrors the language in Biben v. Card, 119 F.R.D. at 428, which held that disclosure of information in a non-public SEC proceeding constitutes a only a limited waiver of the attorney client privilege if the information was communicated to outside counsel for the purpose of "corporate housecleaning."  This suggests that Dyadic tacitly has abandoned its claim of work product privilege in favor of attorney client privilege.

17

Microtune, 258 F.R.D. at 315. Indeed, *in camera* review is appropriate only *after* the burdened party has submitted such detailed evidence. Id. Courts have held that this information, in the form of a privilege log, should be presented to the Court in a timely fashion, usually within fourteen days from the date on which subpoena was served. Universal City Development Partners, Ltd. v. Ride & Show Engineering, 230 F.R.D. 688, 697-98 (M.D. Fla. 2005).

In the instant case, Dyadic has woefully failed to meet its burden of demonstrating that any of the documents which have been subpoenaed from the Moscowitz Firm are subject to the attorney-client privilege. Indeed, Dyadic cannot even identify the documents themselves because it claims never to have seen them. Dyadic has offered no reason why it has not obtained the copies of its own documents which are in the possession of the Moscowitz Firm or why it seeks a court order to obtain those documents. Moreover, the motion to quash itself was not timely filed, since the subpoena was served in December 2008, and the discovery stay had been lifted for more than a month when Dyadic got around to posing its objections and moving to quash the subpoena. Id.

Based on the arguments and authority presented by the plaintiff, it is likely that the subpoenaed documents must be turned over pursuant to FRE 502(a). However, in the absence of a privilege log or other evidence identifying the items which Dyadic argues are protected by the attorney client privilege, this Court cannot make a definitive ruling on that issue. The attorney client

privilege has been waived by Dyadic by virtue of its failure to make a timely and proper assertion of it.

### IV. CONCLUSION

For the foregoing reasons and being duly advised, it is hereby

ORDERED and ADJUDGED that defendant Dyadic International, Inc.'s Motion to Quash Non-Party Subpoena and Objection (DE 203) is DENIED.

DONE AND ORDERED at Fort Lauderdale, Florida, this 29th day of March, 2010.

Copies to:

Counsel of Record

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE